(78 Misc. Rep. 472.)

HILL v. BERNHEIMER et al.

(Supreme Court, Special Term, New York County. December, 1912.)

1. EASEMENTS (§ 16*)—CREATION—OWNERSHIP OF PROPERTY.

One who owns an entire tract, or adjoining parcels of land, creates no easement, by distributing or redistributing the burdens of the various portions, till a severance of title occurs.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. § 16.*]

2. EASEMENTS (§ 16*)—CREATION—SEVERANCE OF TITLE.

The rule that the grantee of a portion of a tract takes all those apparent and visible easements which were used by the owner for the benefit of the part conveyed, and that the grantor is precluded from denying to his grantee any rights in his adjacent land which may have been within the contemplation of the grantee, does not apply to a conveyance of a servient portion of the tract.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. § 16.*]

3. EASEMENTS (§ 16*)—CREATION—SEVERANCE OF OWNERSHIP.

No easement survives to the grantor of the servient portion of a tract, except easements of strict necessity, unless the conveyance contains an express reservation.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. § 16.*]

4. EASEMENTS (§ 16*)—CREATION—IMPLICATION.

A tract of land purchased subject to a mortgage extended from street to street. The purchaser built two houses facing one street, with a party wall on the middle line of the tract, leaving a 4-foot alley on each side. Facing the other street he built two houses, leaving an 8-foot alley between them to the rear courtyard, joining that of the other two houses. The front of the property on which the first two houses were built was a perpendicular cliff, 30 or 40 feet above street level, and a flight of steep stone steps led down to the street, while the rear entrance was the 8-foot alley between the other houses. The mortgage on the two houses facing the cliff was subsequently released, but the release reserved no easement over the tract on which the other houses were built. *Held,*

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that no reservation of an easement could be implied, and a complaint to restrain purchasers of the houses adjoining the 8-foot alley from erecting a line fence, and from cutting off water, gas, and sewer pipes running from their land to the other portion of the tract, must be dismissed.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. § 16.*]

Action by George Hill against Lorin S. Bernheimer and another, as executors under the last will of Abraham Bernheimer, and also individually, for an injunction to restrain erection of a line fence. Complaint dismissed.

Lawrence E. French, of New York City (James F. Donnelly, of New York City, of counsel), for plaintiff.

Philip S. Dean, of New York City (David B. Ogden, of New York City, of counsel), for defendants.

PAGE, J.   Prior to the year 1907 Charles Kronfeld was the owner of a plot of ground having a frontage of 50 feet on Decatur avenue, in the city of New York, and running through the block, with a frontage of 50 feet on Webster avenue.   The depth of the plot from street to street was 190 feet.   At this time the property was unimproved. On February 1, 1907, he made a mortgage to one Benjamin Abert to secure the payment of $4,000, which was a lien upon the entire property.   On June 11, 1907, he conveyed the property, subject to the mortgage, to the Cosmos Realty Company.   Plans had already been filed for the building of four apartment houses, and the Cosmos Realty Company began their construction.   On September 5, 1907, a mortgage upon the entire plot was made to one James G. Wentz to secure the payment of $24,000, and the prior $4,000 mortgage to Benjamin Abert was, by agreement, subordinated to it.   On July 21, 1908, Vincent Avallone, at a foreclosure sale of the $4,000 mortgage, became the owner of the property, subject to the $24,000 mortgage, and completed the construction of the four houses already commenced by his predecessor.   Two of the houses fronted on Webster avenue.   These were built on the middle line of the plot, with a party wall between them and an alleyway 4 feet in width on each side.   The other two fronted on Decatur avenue, and, instead of being placed together, they were built upon the line of the property on either side and had an 8-foot alley running between them, which led to a rear courtyard.   This rear courtyard joined with the courtyard of the Webster avenue houses, and all of the plot not covered by the four buildings was paved with concrete, making one continuous way through the 8-foot alley from Decatur avenue into the court, and from the court around either side of the Webster avenue houses.   The front of the property on Webster avenue was a perpendicular cliff 30 or 40 feet above street level, and a flight of steep stone steps ran down to the street.   These made a very difficult and inconvenient means of access and egress, for which reason they were seldom used.   The real entrance to the Webster avenue houses was from Decatur avenue through the alley between the two houses on that street.   This was evidently the intention of the

---

builder, and the testimony shows that the premises were used in that way almost exclusively. The sewer, water, and gas connections of· the Webster avenue houses were also made with the Decatur avenue· mains through this alleyway, as there were no mains at that time on Webster avenue.

This was the state of the premises in 1908, when, on October 29th of that year, in consideration of payment of part of the $24,000 mortgage, one of the Webster· avenue houses was · released from the lien of that mortgage. Thereafter the mortgage was a lien only upon the· northern house on Webster avenue and the two Decatur avenue houses. Vincent Avallone, the owner of the premises, then placed a new mortgage upon the two Decatur avenue houses on November 30, 1908, to secure the payment of $14,000 to Abraham Bernheimer, the defendants' testator. The next day, December 1, 1908, the two Decatur avenue plots were released from the lien of the prior $24,000 mortgage, after which the lien of that mortgage only covered the one northern plot and house on Webster avenue. On May 4, 1911, the defendants became the owners of the Decatur avenue houses and lots by fore-· closure of the mortgage of November 30, 1908, and on August 10; 1911, the plaintiff became the owner of the northern Webster avenue house and lot by foreclosure of the Wentz mortgage of September 5, 1907. The defendants started the erection of a fence on the line between their property and the Webster avenue property, and, it is claimed, threatened to cut off the water, gas, and sewer pipes running over their land to that of the plaintiff. This action is for an injunction restraining them from so doing, on the ground that the plaintiff has an easement of access over defendants' premises to Decatur avenue through the alleyway between the houses, and for the use of the pipe connec-, tions with the Decatur avenue mains.

[1] The facts of the case are practically undisputed. The question to be determined is, when, if ever, the plaintiff's easement was acquired. On November 30, 1908, Vincent Avallone was the owner of the entire plot by one title, subject only to the Wentz·mortgage of $24,000, which also covered the entire property. Up to that time there was no severance of the lots now owned by the plaintiff and defendants. They were held by one title, and there could be no easement in favor of one portion over another; for it is a well-settled principle of the law of servitudes that the owner of an entire tract, or of adjoining pieces of· land, may distribute and redistribute the burdens of its various por-·' tions at will, and no easement can arise until a severance of title occurs. If the plaintiff has the easements which it claims over the land of the defendants, they must have been acquired subsequently to November 30, 1908.

[2] The first severance occurred on November 30, 1908, when Avallone mortgaged the lots now owned by the defendants to Bernheimer to secure the payment of $14,000. In the deed to Bernheimer there was no express reservation of any easement in favor of the Webster avenue lots. It remains, therefore, to be determined whether the easements claimed were impliedly reserved to the grantor by reason of·the condition of the premises at that time.

There is an early rule of the common law, which has been followed in this state, that where the owner of land sells and conveys a portion of it, his grantee takes all those apparent and visible easements which were used by the owner for the benefit of the part conveyed. It is assumed that the parties contracted with reference to the physical condition of the property at the time of the sale; and construing the grant, as we must, most strongly against the grantor, he is precluded from denying to his grantee any rights in his adjacent land which may have been within the contemplation of the purchaser. Curtiss v. Ayrault, 47 N. Y. 73; Paine v. Chandler, 134 N. Y. 385, 32 N. E. 18, 19 L. R. A. 99.

The same rule has not, however, been applied where the servient portion has been conveyed. In that case, unless there be an express reservation in the deed, no easements will survive to the grantor over the portion granted except easements of strict necessity. An early case (Burr v. Mills, 21 Wend. 290) held that where an owner of land conveyed a portion of his premises, which at the time of the conveyance was flowed by a milldam on the grantor's land, and made no express reservation of the right to continue to flood the land, he had lost the right, and could not set up an implied reservation. Cowen, J., writing for the court, says:

"A man makes a lane across one farm to another, which he is accustomed to use as a way. He then conveys the former, without reserving a right of way. It is clearly gone."

There are a few dicta which fail to make this distinction, the most notable of which is contained in the case of Lampman v. Milks, 21 N. Y. 505, in which Judge Selden, in a learned discourse on the law of easements, seems to infer that the same rules would apply to both easements by implied grant and easements by implied reservation; but there is no case which directly applies the same rules to both, and the law has been settled by a long line of decisions in the highest court of this state. It is ably stated by Vann, J., in Wells v. Garbutt, 132 N. Y. 430, 435, 30 N. E. 978, 979, as follows:

"As a grantor cannot derogate from his own grant, while a grantee may take the language of the deed most strongly in his favor, the law will imply an easement in favor of a grantee more readily than it will in favor of a grantor. * * * Where the owner of two parcels of land conveys one by an absolute and unqualified deed, we think that an easement will be implied in favor of the land retained by the grantor and against the land conveyed to his grantee, only in case the burden is apparent, continuous, and strictly necessary for the enjoyment of the former."

[3] Again, in Paine v. Chandler, 134 N. Y. 385, 388, 32 N. E. 18, 19 (19 L. R. A. 99), the court said:

"The rule of strict necessity is applied to implied reservations but not to implied grants."

The degree of necessity required in the case of an implied reservation is stated in Wells v. Garbutt, supra, 132 N. Y. 438, 30 N. E. 980:

"While absolute physical necessity need not be shown, as in the case of landlocked premises, or the support of a wall, there must be a reasonable necessity as distinguished from mere convenience."

See, also, Ogden v. Jennings, 62 N. Y. 526, 531; Bauman v. Wagner, 146 App. Div. 191, 195, 130 N. Y. Supp. 1016.

[4] In applying this rule the courts hold that, where the property can be put to all of its reasonable uses without imposing any burden on the adjoining premises, there is no necessity. In the present case it would be much more convenient for the owner and tenants of the Webster avenue property if they could use the alleyway over the defendants' lots, and it will be grossly inconvenient for them to use exclusively the steps leading down the precipice. To make new water, gas, and sewer connections through Webster avenue might also be very costly. The only sewer with which connection can be made is on the Gun Hill road, 350 feet north of the plaintiff's property. But the property can nevertheless be put to every reasonable use of which it is susceptible, and its use fully enjoyed, without imposing any easement or burden upon the defendants' land. Therefore no real necessity exists, and no reservation of an easement can be implied.

There remains to be considered the effect of the Wentz mortgage of $24,000, under which the plaintiff holds, and its subsequent release. This mortgage was a lien upon the property now held by both the plaintiff and the defendants when the defendants' mortgage was given, and was released from the defendants' property on the day following. The release reserved no easement in favor of the property still remaining under the lien, and merely withdrew the lien from the Decatur avenue lots. The result of such a release was determined by the Appellate Division of this department in the case of Scrymser v. Phelps, 33 Hun, 474, 479, which is a case very similar to the case at bar. In that action one Spofford owned a building facing on Broadway and two other buildings in the rear of it fronting on Morris street, in this city. There was a passageway through from Broadway to the rear buildings, which was commonly used by the occupants of all three buildings for their convenience. Spofford mortgaged the entire premises, including the Morris street property, to an insurance company. Thereafter the mortgagee, in consideration of payments made on account of the mortgage debt, released his lien from the Broadway premises. The Broadway building was then sold to the defendant without reference to the passageway in the deed of conveyance. The mortgage, which had been released from all except the Morris street property, was foreclosed, and title passed to the plaintiff, who brought an action to prevent the defendant from obstructing the passageway through to Broadway. The learned court there said:

"In this release no reservation was made to the insurance company (mortgagee) of any right or privilege for itself or of any of the occupants of the property, still left subject to the mortgages, to use, occupy, or enjoy any part of the premises released for any purpose whatsoever; but the instrument contained an absolute and unqualified release of the property described in it from the mortgages."

The court then proceeded to hold that no implied reservation of an easement could result, as the passageway was one of mere convenience and not a necessity.

This language and result must apply with equal force to the case of the plaintiff. No reservation of a right to use the Decatur avenue

premises was made when the lien of the mortgage under which the plaintiff holds was released from the defendants' lots. No reservation of an easement or other right was made in the mortgage deed from Avallone to the defendants' testator, and in neither case can an implied easement be sustained. It follows, therefore, that the complaint must be dismissed, with costs.

Complaint dismissed.