STATE OF MISSOURI at the Relation of VICTOR R. APPEL and BESSIE W. APPEL, his wife, Relators, v. WILLIAM C. HUGHES, EDWARD J. McCULLEN, and LYON ANDERSON, Judges of the St. Louis Court of Appeals.—No. 38383.—173 S. W. (2d) 45.

Division One, July 6, 1943.

Rehearing Denied, July 20, 1943.

*Cobbs, Logan, Roos & Armstrong* for relators.

490

*Luther Ely Smith, Luther Ely Smith, Jr., Victor R. Harris* and *Harold C. Hanke* for respondents.

■ DALTON, C.—This cause having been reassigned, we adopt without quotation marks a statement of facts and issues prepared by one of our associates.

■ This cause is in certiorari to quash the record and opinion of the St. Louis Court of Appeals in Gerber v. Appel et al. (Mo. App.), 164 S. W. (2d) 225. In such proceeding we look to the opinion only for the facts. State ex rel. Massman Construction Co. v. Shain et al., 344 Mo. 1003, 130 S. W. (2d) 491. Pleadings and documents referred to in the court of appeals opinion may be considered. State ex rel. Brotherhood of Locomotive Firemen and Enginemen v. Shain et al., 343 Mo. 666, 123 S. W. (2d) 1.

The facts as appear in the opinion of the court of appeals are these: September 26, 1925, Leopold Ackerman owned a tract of land in Ladue, St. Louis County, fronting 698.22 feet on the north side of Clayton Road and extending north 727 feet to the right of way of a street railway. On September 26, 1925, Ackerman and wife conveyed the east portion of the tract to Edward J. Hopkins and wife. The portion conveyed to Hopkins and wife fronted 257.07 feet on Clayton Road, and the east 178.92 feet thereof extended north 727 feet to the street railway right of way, but the west 78.15 feet

extended north only 353.84 feet. The Ackerman deed to Hopkins reserved a walkway 10 feet in width along the west line of the land conveyed, which reservation follows:

"Reserving, however, unto the said Leopold Ackerman, one of the parties of the first part herein (being the owner of the contiguous land west of the property herein conveyed for a distance of 353.84 feet from Clayton Road) a right of way ten feet in width, over the property herein conveyed, running southwardly from the south line of right of way of the Clayton Division [46] of the United Railways Company along the west line of property herein conveyed to the north line of Summit tract, thence westwardly along the north line of Summit tract 78.15 feet; thence southwardly along the west line of property herein conveyed 353.84 feet to the north line of the Clayton Road, which right of way shall be used only as a walk for pedestrians.

"The easement herein reserved shall run with the land, and shall inure to the benefit and use of the said Leopold Ackerman as owner of the contiguous land hereinabove mentioned, his heirs and assigns, as well as to the benefit and use of the grantees herein, their heirs and assigns."

May 8, 1926, Ackerman and wife conveyed to Fredrick A. Gerber the parcel of the land lying immediately west of the Hopkins parcel, and fronting 441.15 feet on the north side of Clayton Road, and extending north 353.84 feet. The east line of the Gerber parcel coincides with the west line of the walkway reserved in the Ackerman deed to Hopkins. There is a dwelling house on the Gerber parcel, which house, prior to the conveyance to Gerber, was occupied by Ackerman, and thereafter by Gerber. The dwelling fronts toward and is 126 feet north of Clayton Road, and is 38 feet west of the reserved walkway. There is a garage back of (north of) the dwelling, and there is a driveway east of the dwelling leading from the garage to Clayton Road. It is 8 feet from the west line of the reserved 10 foot walkway on the Hopkins parcel to the driveway on the Gerber parcel. There is a woven wire fence, erected by Gerber, on the west line of the reserved walkway, which is the east line of Gerber's parcel. The fence extends north from Clayton Road, and there is a gate in the fence 230 feet north of Clayton Road and 104 feet north of Gerber's dwelling.

March 18, 1940, Hopkins and wife put of record a plat of their parcel for a subdivision to be known as Whitfield Lane. The subdivision had 5 numbered lots and one not numbered. The unnumbered lot was in the southeast part of the parcel. The plat for Whitfield Lane provided for a roadway easement 20 feet in width along the west line of the Hopkins parcel for 230 feet north from Clayton Road, and then the roadway easement curved to the northeast and terminated at a point a short distance south of the street railway

right of way. It thus appears that the west 10 feet of the roadway easement of Whitfield Lane, for 230 feet north (to the gate) from Clayton Road was, so to speak, superimposed upon the 10 foot walkway reserved in the Ackerman deed to Hopkins. It was stated on the Whitfield Lane subdivision plat that the 20 foot roadway easement provided thereon was forever to be a roadway "for the common use and benefit of the owners of the lots in this subdivision."

April 15, 1940, Hopkins and wife conveyed Whitfield Lane subdivision, except the unnumbered lot, to Victor R. Appel and wife. This deed was "subject to the right of way over the west ten feet of said property to be used as walkway for pedestrians as reserved" in the Ackerman deed to Hopkins.

August 12, 1940, Appel and wife conveyed to William H. Husmann and wife, lot 1 (adjacent to Gerber) of Whitfield Lane subdivision "subject to building lines, easements, conditions, restrictions, and limitations now of record."

In October, 1940, Appel and Husmann "began to cut down the trees" and "to construct a twenty foot roadway" north from Clayton Road. The west ten feet of this roadway, as stated, was on the 10 foot walkway reserved in the Ackerman deed to Hopkins. Gerber sought injunction to enjoin "defendants and each of them, their agents and servants, contractors and subcontractors, from constructing the proposed twenty foot roadway or any roadway upon said ten-foot walkway easement or any portion of the same, or in otherwise interfering with the use and enjoyment of said easement by plaintiff, and to assess the damages to said walkway by reason of the cutting down of the trees on said walkway."

A temporary restraining order was made, but upon trial, the temporary order was dissolved and Gerber's bill dismissed. He appealed to the St. Louis Court of Appeals and that court reversed the judgment and remanded the cause with directions to enter a judgment in favor of Gerber "granting a perpetual injunction as prayed in his petition", and it is this opinion that relators say conflicts with certain controlling decisions of this court.

Relators say that the opinion by the court of appeals conflicts with Bales et ux. v. Butts et ux., 309 Mo. 142, 274 S. W. 679; Gardner v. Maffitt et al., 335 Mo. 959, 74 S. W. (2d) 604; Stotzenberger v. Perkins, 332 Mo. 391, 58 S. W. (2d) 983.

In the opinion the court of appeals stated the respective contentions of the parties in the Gerber case as follows [164 S. W. (2d) l. c. 227]:

"Plaintiff (Gerber) contends that the deed from Ackerman and wife to Hopkins and wife reserves a strip of land ten feet in width to be used only as a walk for pedestrians, and that the easement inures to the benefit and use of the owners of the land on each side of the strip, and that the construction of a vehicular roadway on said

strip would violate the reservation. Defendant contends that the inhibition against the use of the reserved strip for any purpose other than as a walk for pedestrians applies to Ackerman only, and not to the grantees, and that the grantees are vested with the right to such use of the strip as does not interfere with the reasonable enjoyment of the easement, and that the use of the strip as a vehicular roadway would not interfere with the reasonable enjoyment of the easement.''

After stating the respective contentions the court of appeals goes on to say [164 S. W. (2d) 227-228]: ''The language of the reservation is unambiguous. Its meaning is quite clear. It provides that *the walkway easement reserved shall inure to the benefit and use of* both Ackerman and the grantees. This being so, *it necessarily follows that the inhibition against the use of the way for any purpose other than as a walk for pedestrians applies to both.* In other words, since *the easement is for the benefit and use of both, the inhibition is necessarily against both, so that neither can use the way for any purpose other than as a walk for pedestrians.*

''It is true that the grantees *would have had* the right to use the reserved strip as a walkway *without an express provision in the reservation to that effect,* provided such use did not interfere with its use as a walkway by Ackerman, *but in such case the right of Ackerman* to use the strip as a walkway *would have been the paramount right.* However, in any event, in construing the reservation, we cannot ignore the fact that *the parties undertook, in express terms, to save to the grantees the right to use the strip as a walkway.*'' (Italics ours.)

▊ Relators construe the opinion of the court of appeals, especially that part we have italicized, as holding that the same person at the same time may have an easement interest and a fee title in the same land. If the opinion so holds then such ruling conflicts with the ruling in the Bales, the Gardner, and the Stotzenberger cases, supra.

Bales et ux. v. Butts et ux., supra, was to obtain a mandatory injunction to restore a water connection severed by the defendants. One Andrews, since April 8, 1895, owned and occupied, until October 16, 1920, a five acre tract lying immediately south of Duncan street in St. Joseph, Missouri, upon which tract there were two houses, one on the north part of the tract and one on the south part. A water pipe ran east and west in Duncan street, and Andrews, for 15 or 20 years, had a water pipe on the tract connecting with the pipe in Duncan street and extending south and serving the house on the north part of the tract and also serving the house on the south part.

October 16, 1920, Andrews conveyed the south part of the tract to the plaintiffs Bales, and March 25, 1921, he conveyed the north part of the tract to defendants Butts. Defendants Butts, after they came into possession of the north part of the tract, severed the

water pipe connection to the Bales house on the south part of the tract, and the Bales sought a mandatory injunction as stated.

Plaintiffs Butts alleged "that ever since the laying of said pipe the house on said property now occupied by plaintiffs has been connected with said water pipe and received its water supply through same; that the property north thereof became, and at all times after the laying of said pipe was, and now is, subject to an easement and right, in favor of the property now owned by the plaintiffs for the purpose of said water pipe running through same and connecting with the property now owned by plaintiffs; that when plaintiffs purchased said real estate from Andrews and wife it was with the understanding and agreement that they should have the free use of said water pipe from said Duncan street through the property now owned by defendants for supplying water to the property so purchased by the plaintiffs, and that they did so purchase said right from said Andrews and wife. . . . That plaintiffs have a right to have said water pipe remain unmolested and unobstructed; that there is no other way feasible or practicable to receive a water supply at their property or extend a water pipe thereto, and that the only means [48] of obtaining water is through said pipe; that defendants wantonly severed the connection and deprived plaintiffs of water."

The trial court, in the Bales case, granted the relief asked, and defendants appealed. The opinion recites [274 S. W. 1. c. 682] that the deed from Andrews to plaintiffs "makes no reference to the water pipe in controversy, nor to the right of respondents (Bales) to receive water through said water pipe. . . . `Andrews and wife conveyed to defendants their land on April 2, 1921, by warranty deed, and the latter contained no reference to the water pipe, nor to any easement claimed by respondents or any other person."

In the course of the opinion the court said [274 S. W. 681]: "Respondents claim that defendants' land is impressed with an easement in their favor for the perpetual maintenance of a water pipe connecting their dwelling house with a water main in St. Joseph, Mo. On the other hand, it is contended by appellants that, on the facts disclosed by the record, the plaintiffs are not entitled to maintain this action. Turning to the evidence, we find that Frank Andrews and wife were the owners and the common source of title of the real estate conveyed by them to plaintiffs and defendants as described in evidence; that while the owners of all said land, and about 15 years before the date of trial, said Andrews and wife constructed the water pipe in controversy, beneath the surface of the ground from Duncan street south, over the lands owned by plaintiffs and defendants. From the time Andrews and wife constructed said water pipe up to October 16, 1920, when they executed a written agreement to convey a part of same to respondents, there was no easement impressed

on said land, as the whole and every part of same belonged to Andrews and wife. "So long as these lots belonged to the same owner, there could be no easement in favor of one lot, or servitude upon the other; for a man cannot have an easement over his own land.' Scott v. Beutel, 23 Grat. (64 Va.) 1.''

Relators, in the brief, analyze Gardner v. Maffitt et al., supra, about as follows: Maffitt who owned a lot in an old subdivision on the south side of Pine street, St. Louis, contended that each lot in said subdivision enjoyed certain easements and restrictions over the other lots, by virtue of a plat and certificate filed at the time the subdivision was opened in 1895. The subdivision was originally laid out by the Rex Realty Company. The court held that the Rex Realty Company could not have created any easements until it sold one of the lots, because, being the owner of the property in fee, it could not grant to itself a lesser estate such as an easement.

In the Gardner case the court quoted from 19 C. J., p. 945, Sec. 156, n. 60, as follows [74 S. W. (2d) l. c. 606]: "So long as a tract remains in one ownership, there can be no dominant and servient tenements as between different portions, and the owner may rearrange the quality of any possible servitude.''

And the court, in the Gardner case, went on to say [74 S. W. (2d) l. c. 607]: "Hill v. Bernheimer, 78 Misc. 472, 140 N. Y. S. 35, cited thereunder, in effect, holds that one who owns an entire tract or adjoining parcels of land, by distributing or redistributing the burdens of the various portions, creates no easement until a severance of title occurs. To like effect is Packer v. Mayor and Council of City of Woodbury, 129 A. 406, 407, 3 N. J. Misc. 661. Hence, in this instance, notwithstanding the recorded plat with the certificate as to building line restriction indorsed thereon, it cannot be said that there was an effective grant of such easement or restriction until a severance of title occurred. Until some person other than the Rex Realty Company, owner of the entire subdivision, acquired title to some part thereof, the owner of the whole had a perfect right to convey in any manner fairly agreed upon between it and the party to whom the first conveyance was made.''

Stotzenberger v. Perkins, supra, was for an injunction to restrain obstruction of a roadway across plaintiff's land. The defendant claimed that when he purchased adjoining land he acquired the fee in the roadway. The plaintiff contended that he owned the fee and that defendant had only an easement. Defendant obstructed the road and threatened to continue to do so. It was held that the defendant had only an easement right. In ruling the case the court said [58 S. W. (2d) l. c. 987]:

"As the owner of the dominant estate, the defendant has, under our interpretation of the deed, the right to put and maintain the roadway strip in a condition for passage thereon and the right to

a free passage on such portions or all of the way as he thinks proper or necessary to make repairs, or for any purpose connected with the enjoyment [49] of his estate; but the plaintiff as owner of the servient estate is under no obligation to maintain or repair. 9 R. C. L., Sec. 51. On the other hand, there remains with plaintiff the right of full dominion and use of the strip except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant easement.''

In Goddard on Easements (American Ed.), 280, it is stated: ''The existence of an easement does not confer any right on the grantee that the owner of the servient tenement should not use his land in any way which is not inconsistent with his enjoyment of the easement; neither can it prevent the landowner granting to a third person another easement or right if it does not hinder the first grantee from having the full enjoyment of his easement.'' See also, Campbell et al. v. Kuhlmann, 39 Mo. App. 628; Schroer v. Brooks, 204 Mo. App. 567, 224 S. W. 53, l. c. 57. The ruling in the Campbell case is stated in the headnote as follows:

''The grant of an easement carries with it by implication only such incidents as are necessary to the reasonable enjoyment of it; therefore, the grant of a right of way which is not exclusive in its terms, and which can be reasonably enjoyed without being exclusive, leaves in the grantor and his assigns the right of user in common with the grantee.''

It is conceded by respondents that one cannot have an easement interest and a fee title in the same land at the same time; and it is conceded that where such interests vest in the same person, the easement interest is merged in the fee title. But it is contended that the opinion of the court of appeals does not hold otherwise.

It is stated in respondents' brief that the opinion holds that ''the servient owner (Hopkins) abridged the rights of the dominant owner (Gerber) in a ten foot'' walkway reserved in the Ackerman deed ''by starting to build a twenty foot vehicular roadway on top of and completely over said ten foot'' walkway. And it is further stated in respondents' brief that 'the opinion ''may have employed expressions not necessary to the determination of the issue'' decided. The argument amounts to a contention that respondents held that the construction of the west 10 feet of the 20 foot roadway upon the 10 foot walkway was an *unreasonable interference with Gerber's easement rights* in the 10 foot walkway reserved in the Ackerman deed to Hopkins, and that the statements complained of are mere obiter.

Of course, if the criticised portion of respondents' opinion, supra, was not necessary to a determination of the issues decided and was not the basis for the decision, then this court would not be authorized in quashing the opinion on certiorari. State ex rel. Brigance et al. v. Smith et al., 345 Mo. 793, 135 S. W. (2d) 355,

l. c. 358; State ex rel. Talbott v. Shain, 334 Mo. 617, 66 S. W. (2d) 826, 828. "Certiorari proceedings involving conflicts in rulings are not concerned with dictum or nonconsequential inconsistencies, if any, appearing arguendo in an opinion. They do not rise to the dignity of a ruling." State ex rel. Terminal R. R. Ass'n of St. Louis v. Hughes et al., Judges of St. Louis Court of Appeals, 350 Mo. 869, 169 S. W. (2d) 328, 330.

While we may concede that the issue presented for decision was Gerber's right to relief by injunction to prevent interference with the use and enjoyment of his "ten foot walkway easement," and while respondents state that "there can hardly be a question that the execution of the purpose to construct a vehicular roadway on the strip of ground reserved for a walkway would abridge the easement," and while respondents found for plaintiff (appellant), and reversed the judgment and remanded the cause "with directions to enter a judgment in favor of plaintiff (granting a perpetual injunction as prayed in his petition)," it does not necessarily follow that respondents did not, as one basis, if not the primary basis, for the relief granted, announce conclusions of law directly in conflict with controlling decisions of this court.

Definitely, the court held that Appel, the grantee of Hopkins, owned the fee and that Gerber, the grantee of Ackerman, had an easement in the 10 foot right of way for the sole purpose of use as a walkway for pedestrians. Further, the court held that the reservation in the Ackerman deed was an "inhibition against the use of the way for any purpose other than as a walk for pedestrians"; that this inhibition "necessarily" applied against Hopkins and his grantee Appel; that Appel, the owner of the fee, was restricted and limited by the "reservation" to the same use of the way as the holder of the easement. The court's decision does not alone rest upon any theory of *unreasonable interference* (by the owner of the fee) with the *easement* for a walkway (owned by Gerber), as clearly appears [50] from the following statement: "It is true that the grantees *would have had* the right to use the reserved strip as a walkway *without an express provision in the reservation to that effect,* provided such use did not interfere with its use as a walkway by Ackerman, *but in such case* the right of Ackerman to use the strip as a walkway *would have been the paramount right."* (Italics ours.) The decision, therefore, rests squarely upon the holding that Appel (grantee of Hopkins and the owner of the fee, subject to the walkway easement) had no right to use "the way for any other purpose than as a walk for pedestrians," and that Ackerman (and his grantee, Gerber) had no paramount right.

The court further held that both the grantor and the grantees had the same right, to wit, "the walkway easement" which inured "to the benefit and use of both Ackerman and the grantees." This

is evidenced by the further statement: "In other words, since *the easement is for the benefit and use of both, the inhibition is necessarily against both,* so that neither can use the way for *any purpose other than as a walk for pedestrians.*" (Italics ours.) Respondents, therefore, ruled that the same person at the same time had an easement interest and a fee title in the same land, and that the grantee and holder of the fee was as much limited in the use of the fee by the "reservation" as the one in whose favor the easement was reserved. In so ruling, respondents have announced a conclusion of law in conflict with the latest controlling decisions of this court, supra.

It has been suggested that respondents may have ruled the case upon the theory that the reservation in the deed created an easement in the grantor for a walkway and that the provisions of the deed further amounted to an *express restriction* on the fee conveyed, so that the owner of the fee (subject to the easement reserved) was *restricted* by the terms of the deed to a use of the way for no other purpose than as a walkway. In other words, that in effect the court of appeals undertook to construe the terms of the deed and to determine the intention of the parties and did determine it, and in so doing contravened no controlling decisions of the court. The cause was not ruled on such theory. Respondents admit that the purpose of the action was to enjoin defendants from *interfering* with plaintiff's walkway *easement.* There is no suggestion that plaintiff sought to enforce *restrictions* on the use of real estate. Respondents concede the language of the *reservation* is unambiguous and its meaning clear, and hold that *plaintiff has an easement.* They further hold that defendant Appel, the owner of the fee, has an *easement* (the same easement) created by the same *reservation* in the same deed and in the same real estate.

We are not concerned with the merits of this controversy, nor with whether plaintiff Gerber is or is not entitled to relief. State ex rel. Hoyt v. Shain, 338 Mo. 1208, 93 S. W. (2d) 992, 999 (14-16). We are concerned only with the question of whether respondents have announced conclusions of law in conflict with our latest controlling decisions. "Courts of Appeals are courts of last resort, and, acting within their jurisdiction and not in violation of our decisions, determine litigated issues as their judgment dictates with as great a freedom as this court. State ex rel. v. Ellison, 269 Mo. 151, 156, 190 S. W. 274, 275(2)." State ex rel. Hoyt v. Shain, supra. It is not contended that we have determined (by prior decision) whether the construction of a vehicular roadway (under the facts shown) on a strip of ground reserved for a walkway would be an unreasonable interference with the walkway easement, and that question is for respondents.

Having reached the conclusion that respondents have, in the criticised portion of their opinion, announced a conclusion of law

500

contrary to the latest controlling decisions of this court, it follows that said portion of said opinion of respondents and the record made pursuant thereto should be quashed. It is so ordered. *Bradley* and *Van Osdol, CC.,* dissent.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.