Robert KIWALA, Plaintiff-Appellant,

v.

James BIERMANN and Victoria
Biermann, his wife,
Defendants-Respondents.

No. 38187.

Missouri Court of Appeals,
St. Louis District, Division Two.

Aug. 9, 1977.

Daniel W. Brown, St. Louis, for plaintiff-appellant.

Cupples, Cooper & Haller, Inc., Bernard W. Gerdelman, Albert J. Haller, Clayton, for defendants-respondents.

McMILLIAN, Presiding Judge.

Appellant Robert Kiwala appeals from a judgment in favor of respondents James and Victoria Biermann, husband and wife, denying his petition for a mandatory injunction. The injunction sought to command respondents to cease and desist from utilizing a private road as a means of ingress and egress to respondents' property. For reasons herein given, we affirm the judgment.

Appellant is the owner of Lot No. 5, in fee simple, of Fontainebleau Estates Subdivision and as such owner of an easement for the usage of Fontainebleau Drive (also known as Afshari Drive), a private road for the usage of the members of Fontainebleau Estates Subdivision.

On or about May 20, 1974, respondents began to utilize Fontainebleau Drive as a means of ingress and egress to their property which abuts Fontainebleau Estates but is not a part thereof.

On May 20, 1974, respondents filed with the recorder of deeds of St. Louis County a "Deed of Correction and Agreement," whereby respondents purported to become members of Fontainebleau Estates and as such entitled to use Fontainebleau Road as owners of the easement.

On February 18, 1975, appellant brought this action for a mandatory injunction against respondents' use of Fontainebleau Drive. On April 18, 1975, respondents filed with the recorder of deeds of St. Louis County a "Deed of Easement" from Henry C. and Betty J. Rechtine, husband and wife, owners of Lot No. 1 of Fontainebleau Estates, and Jamestown Investment Corp., owner of Lot No. 2 of said subdivision, for the usage of that part of Fontainebleau Drive which passes through each of their lots.

In June, 1969, Fontainebleau Estates was duly established and recorded as a subdivision in an unincorporated area of St. Louis County. All lots set forth in the plat exceeded three acres in size. The subdivision was made subject to the restrictive covenants and conditions contained in a duly recorded *Trust Indenture*, which provides, inter alia:

"1. . . . Jamestown Investment Corporation, without the joinder of others, may amend, modify or change any condition or restriction herein contained, including any front building, side or set back line, so long as it is the owner of any one lot in said subdivision.

\*      \*      \*      \*      \*      \*

"15. It is contemplated that—plats of adjacent land shall be filed to be known as FONTAINBLEAU ESTATES, and it is expressly provided that if and when such plats are filed, the lots included in them shall be considered part of this subdivision and shall be subject to the same restrictive covenants and conditions and under the control of the same Board of Trustees and Architectural Control Committee and all lot owners in all FONTAINBLEAU ESTATES SUBDIVISIONS shall vote together whenever a vote of lot owners is required by the provisions of this Indenture or the Indentures of other FONTAINBLEAU ESTATES SUBDIVISIONS. It is the intention of the makers to have all lots in FONTAINBLEAU ESTATES, regardless of when the plats for such lots are filed, subject to this common indenture and that said plats of FONTAINBLEAU ESTATES, shall have consecutive numbers.

Pursuant to these provisions the cestui que trust under the indenture, Jamestown Investment Corporation and a trustee named therein, Houshang Joe Afshari (Joe Afshari), executed a Deed of Correction and Agreement which was duly recorded in February, 1975, whereby respondents' property, which exceeded three acres in size and was contiguous to Fontainebleau Estates, was made a part of the subdivision. The Deed of Correction and Agreement provided that respondents' property became subject to both the conditions and restrictions contained in the Indenture and the conditions and grants set forth in the plat which established the subdivision. These conditions and grants purport to give respondents the same privileges enjoyed by the other lot owners in Fontainebleau Estates, including the complete and uninterrupted use of Fontainebleau Drive.

One of the conditions governing the establishment of Fontainebleau Estates as set forth in the plat thereof states in part:

"The 50' wide strip of land shown as Fontainebleau Drive on the above plat, together with its roundings at intersections, is established as an easement for road purposes for the use and benefit of all lot owners in the subdivision."

For reversal appellant argues that the trial court erred in dismissing his petition seeking a mandatory injunction because (1) respondents were not made a part of Fontainebleau Estates Subdivision by reason of the Deed of Correction and Agreement and (2) respondents did not acquire the right to utilize Fontainebleau Drive by obtaining a deed of easement from only two of seventeen lot owners in the subdivision.

Appellant's first argument is based upon subdivision regulation as a method of land use control. Appellant argues that if any subdivision can be enlarged simply by the filing of a deed of correction with the recorder of deeds, then all Planning and Zoning Boards throughout the state are in effect useless in controlling residential land development. Rational planning and zoning would be defeated by deeds of correction. Appellant further argues that because the subdivision ordinance of St. Louis County, St. Louis County Rev. Ord., Title X, Ch. 1005 (1974), provides a method for deleting lots from subdivisions but does not specify one for adding lots for existing subdivisions, the rule of statutory construction applicable is "the express mention of one thing implies the exclusion of the other." Thus appellant would construe the subdivision ordinance to implicitly deny any extension of subdivisions.

■ A complete answer to appellant's first argument is that the subdivision ordinance is inapplicable to subdivisions like Fontainebleau Estates where the minimum lot size is three acres. While the subdivision ordinance does require the Department of Planning to approve a subdivision plat prior to the establishment and recording of that plat, St. Louis County Rev. Ord., Title X, Ch. 1005, § 1005.030, "subdivision" is defined in the ordinance as a "division a redivision of a tract into lots, plats, or sites for development purposes any one of which is less than three (3) acres in area. . ." *Id.* § 1005.040(3b). Fontainebleau Estates, with or without respondents' property, is a subdivision of three acre lots and therefore

is one to which the subdivision ordinance does not apply.

In addition the Deed of Correction and Agreement under which respondents claim to be members of Fontainebleau Estates seems to be precisely the kind of amendment contemplated by the Trust Indenture. The Indenture of an express trust governs the powers of the trustees named therein regarding the subject matter of the trust, *Cozart v. Green Trails Management Corp.*, 501 S.W.2d 184, 187 (Mo.App.1973); a grantor of realty may retain certain rights or powers under an indenture to which that realty is subject, *LeBlanc v. Webster*, 483 S.W.2d 647, 648–50 (Mo.App.1972), including the power to modify the indenture, *e. g.*, *Hisey v. Eastminster Presbyterian Church*, 130 Mo.App. 566, 109 S.W. 60 (1908); see also 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, § 269 (1965). Provision 1(2) empowers Jamestown Investment Corporation to "amend, modify or change" the terms of the Trust Indenture so long as it owns one lot in the subdivision which it did at the time of the execution of the deed of correction and agreement. Provision 15 contemplates and authorizes action by the trustee and the cestui que trust necessary to expand the subdivision by adding adjacent property. The deed of correction and agreement, authorized by the Trust Indenture, made respondents' property a part of Fontainebleau Estates and subject to the conditions and grants set forth in both the Trust Indenture and the plat establishing the subdivision, including the right to use Fontainebleau Drive.

Appellant's second argument is based upon the deeds of easement granted by the Rechtines and Jamestown Investment Corporation as the owners of Lots No. 1 and No. 2 respectively. Fontainebleau Drive is a private road with only one point of ingress and egress and forms a cul-de-sac in the center of the subdivision. Respondents obtained easements only from the owners over whose property runs that portion of the easement (Fontainebleau Drive) to which they sought access. Appellant contends that the owners of these lots acted in a manner inconsistent with the condition set forth in the plat by allowing respondents to use Fontainebleau Drive, thereby reducing the value of appellant's easement. The language of the condition states that Fontainebleau Drive "is established as an easement for road purposes for the use and benefit of all lot owners in the subdivision." Appellant argues that this limits the members of the class who have the right to use this road and gives no one the right to expand their right or diminish any other lot owner's right. The simple answer to appellant's argument is that respondents are indeed lot owners in Fontainebleau Estates by reason of the deed of correction and agreement and as such are within that class of persons who may use Fontainebleau Drive.

In addition, respondents, as grantees under the deeds of easement obtained from the owners of Lots No. 1 and No. 2, claim an easement identical to that of other lot owners to use that portion of Fontainebleau Drive which is contiguous to Lots No. 1 and No. 2. The plat of the subdivision indicates that each of the individual lot owners hold in fee that portion of his lot over which the easement runs. In general the owner of property burdened with an easement (the servient tenement) may use his property in any way which is not inconsistent with the easement. *Reutner v. Vouga*, 367 S.W.2d 34 (Mo.App.1964); *Missouri-Kansas-Texas RR v. Freer*, 321 S.W.2d 731 (Mo.App.1959); *Tracy v. Klausmeyer*, 305 S.W.2d 84 (Mo.App.1957). There may be concurrent easements over the same servient tenement as long as the second easement is not inconsistent with the first easement. The existence of an easement will not "prevent the landowner granting to a third person another easement or right if it does not hinder the first grantee from having the full enjoyment of his easement." *State ex rel. Appel v. Hughes*, 351 Mo. 488, 173 S.W.2d 45, 49 (1943), quoting Goddard on Easements 280 (Am.Ed. 1880).

The facts of this cause present a case of first impression in Missouri. Other jurisdictions, however, have resolved the issue in favor of recognizing concurrent easements when faced with facts similar to those at issue here. In *Glatts v. Henson*, 181 P.2d 917, 920 (Cal.App.1947), the court held that "since the easement [granted] of the city was not exclusive, the identical easement could be granted concurrently to others over the same area [for the same purpose]." *Accord, Holbrook v. Telesio*, 37 Cal.Rptr. 153 (Ct.App.1964); *Barnard v. Gaumer*, 146 Colo. 469, 361 P.2d 778 (1961) (en banc); *Aspen Acres Ass'n v. Seven Associates, Inc.*, 29 Utah 2d 303, 508 P.2d 1179 (1973).

■ If the original easement was not exclusive and the subsequent concurrent easement was not inconsistent or unreasonably burdensome, then the second easement is valid and entitles the grantee to whatever right is granted by the easement. Although the physical arrangement of the subdivision makes Fontainebleau Drive a road used almost exclusively by the lot owners (it is essentially a cul-de-sac), the language of the condition which created the easement is not exclusive. Any doubt about the scope of the easement should be resolved in favor of the free and untrammeled use of the land. *Miller v. Berry*, 270 S.W.2d 666, 670–671 (Mo.App.1954).

Whether the increased use of an easement granted in general terms will be a burden to the servient tenement depends upon the nature of the proposed extended use. *E. g., Karches v. Adolph Investment Corp.*, 429 S.W.2d 788, 793 (Mo.App.1968). The court held that an increase in the number of vehicles using the roadway covered by the easement would not be such a burden and distinguished cases which involved a change in the character of the easement. *Id.; cf., Gerber v. Appel*, 164 S.W.2d 225 (Mo.App.1942), quashed in part, *State, Appel v. Hughes*, 351 Mo. 488, 173 S.W.2d 45 (1943) (attempt to change easement for walkway into one for vehicular traffic); *Kavanaugh v. St. Louis Traction Co.*, 127 Mo.App. 265, 105 S.W. 278 (1907) (attempted use of electric street cars upon an easement for horsedrawn cars) *St. Louis Safe Deposit & Sav. Bank v. Kennett Estate*, 101 Mo.App. 370, 74 S.W. 474 (1903) (erection of a furnace chimney in easement for alleyway); see also, 25 Am.Jur.2d § 77, Easements and Licenses (1966).

■ Respondents' property abuts the only frontage of Fontainebleau Drive which was not included on the original plat of the subdivision. Respondents do not use that portion of Fontainebleau Drive covered by the deeds of easement in any manner which is inconsistent with or materially alters the use of the other lot owners. Respondents maintain a comparable single family residence and use the road as a means of ingress and egress from their property. In *Holbrook*, the court held that the granting of a second, concurrent easement for the use of a wide roadway to a single landowner would not constitute an unreasonable burden on the holder of the initial roadway easement. 37 Cal.Rptr. 154, supra.

The judgment is affirmed.

STEWART and REINHARD, JJ., concur.