George L. GISLER and Georgia H. Gisler, Appellants,

v.

Art ALLEN and Carolyn Allen, Respondents.

No. WD 36276.

Missouri Court of Appeals, Western District.

May 7, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 2, 1985.

Application to Transfer Denied Aug. 7, 1985.

Elvin S. Douglas, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for appellants.

Lynn K. Ballew, Harrisonville, for respondents.

Before NUGENT, P.J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

Appellants and respondents own residences at Lake Winnebago, a suburban real estate development. In this suit they present a contest over the rights of respondents, whose property is some distance from the lakeshore, to locate a boat dock on land which separates appellants' lot from the water. The judgment denied both contestants exclusive shoreline rights but tacitly approved the right of respondents to moor their boat dock opposite appellants' property. From this result, appellants prosecute their appeal. Affirmed.

In the main, the facts of the case are not in dispute. The plat of the Lake Winnebago subdivision delineates first tier and second tier lots. Although first tier lots are described as "lake front lots", the lakeside property boundaries of these lots do not abut the water. They are separated from the shoreline by a strip of land in varying widths determined by the 915 foot contour elevation on the one side and the lot line on the other. The strip is at some points as much as fifty feet in width and at other points, it narrows to a few feet. Second tier lots front upon one of the dedicated streets in the subdivision and provide the lot owner access to the lake only by crossing the street and traversing an easement pathway along the side property line of the first tier lot.

Appellants are the owners of a first tier lot, Lot 16, Block E. Respondents own a second tier lot, Lot 4, Block E. The dispute

in this case concerns the respective rights of the parties to locate boat docks along the lakeshore and to anchor the docks on the reserved strip of land abutting appellants' lakeside property boundary. Also at issue is the entitlement of respondents to non-exclusive use of the reserved strip of land.

According to the subdivision plat and other documents in evidence, the Lake Winnebago Development Company retained title to all of the lakeshore and made no fee conveyance of that land to any lot purchaser. There was, however, a designation on the plat of an undefined interest in access to the lake associated with the platted lots. This was accomplished by a subdivision of the reserved strip of land and the insertion of numbers referring to first tier and second tier lots. The subdivision of the reserved strip was indicated on the plat by lines running parallel to the side lot lines of first tier lots. In the case of appellants' lot, the reserved strip between that lot and the lake was divided into two parcels, one bearing the number 4 and the other bearing the number 16. There appears to be no dispute that these numbers refer to Lot 4, Block E and Lot 16, Block E.

Appellants bought Lot 16, Block E from the development company in 1968. Appellant George Gisler testified he and other purchasers of lots were informed by the development company that the numbers on the reserved strip of waterfront property indicated dock location assignments designated as appurtenances to the lots. The record suggests that the purpose of dividing the reserved strip of waterfront land and assigning numbers was to support a representation to lot purchasers that water access and boat dock locations would be regimented for the benefit of both first and second tier lots. As will hereafter be discussed, however, the developer took no action by any conveyance to define or dedicate any rights in lot owners to the reserved strip. The only indicia of record supporting the representations was the labeling of the waterfront segments shown on the plat.

Lot 4, Block E was sold by the development company in 1964 to purchasers named Markham. The Markhams apparently made no improvements on the lot and there was no attempt by them to use the purported shoreline rights for a boat dock. The Markhams sold the lot in 1978 to respondents.

In contrast to the lack of activity by the Lot 4 owners, appellants immediately commenced improving their property after their purchase of Lot 16 in 1968. They built a residence and installed a dock. In 1969, appellants contacted the development company and proposed to purchase those shoreline rights in the parcel abutting their lot which the plat indicated were reserved for Lot 4. The negotiations, to which the Markhams as the then owners of Lot 4 were not privy, resulted in an agreement for payment by appellants of $2,000.00 to the development company for the Lot 4 shoreline rights. The agreement, signed by the development company and recorded in the office of the recorder of deeds, read as follows:

"In consideration of the sum of one dollar and other valuable considerations, the Lake Winnebago Development Company, Inc. assigns to George L. Gisler and Georgia H. Gisler, husband and wife, all of that certain shoreline easement lying between the eastern half of Lot Sixteen (16) of Block 'E' and the waters of Lake Winnebago including all rights appertaining to Lot E–4, to locate a dock on said property, otherwise subject to easements, terms, and provisions of the 'Declaration of Restrictions' and according to the subdivision plat and specifications as recorded in the Recorder's Office, Cass County, Missouri, said assignment to run with ownership of lot E–16 forever."

The first attempt to exercise any rights to the lakefront associated with ownership of Lot 4 occurred in 1981 when respondents obtained a dock permit from the Lake Winnebago Home Owners Association. Respondents then installed a dock opposite that area of the reserved strip designated on the plat for Lot 4, and moored the dock

with cables attached to the land purportedly covered by the 1969 agreement between appellants and the development company. This precipitated the present controversy.

Appellants' suit was for an injunction prohibiting respondents from locating a dock in the water opposite the described area, from installing any hardware on the land to moor such a dock and from trespassing on the reserved strip.

Respondents answered and counterclaimed seeking a declaration of their easement and for an injunction barring appellants from interfering with respondents' use of the easement. The trial court found the issues in favor of respondents on appellants' claim for injunction and denied relief to respondents on the ground that they had not shown interference with their user rights and they had sustained no damage. The judgment on the counterclaim was not appealed.

We first confront the problem of appellants' failure to state their points relied on in conformity with Rule 84.04(d). The points, grouped under a single heading, consist of two abstract statements of law and a third which is followed by four subparagraphs. Because these latter statements serve to illustrate the lack of definition in what claim appellants were asserting and, in consequence, what error of law it is contended was made by the trial court, the statement of points is set out as follows:

"I. The trial court's decision denying plaintiffs injunctive relief is erroneous and should be reversed because;

A. There is no substantial evidence to support the judgment;

B. The judgment is against the weight of the evidence;

C. The court erroneously applied the law to the facts, in that:

1. The evidence of plaintiffs as to their acquisition of the dock easement rights by a written recorded assignment of dock rights from the development company established at the least a color of title to the area of land in question.

2. Plaintiffs' evidence established all of the essential elements of adverse possession sufficient to extinguish any rights defendants may have in the use of the land, including (a) actual possession, (b) possession open and notorious sufficient to give notice of their claim and possession, (c) exclusive possession, and (d) possession for a term in excess of ten years.

3. Defendants offered no evidence to controvert plaintiffs' exclusive open and hostile use and possession of the area in question for the statutory period of ten years.

4. Plaintiffs presented sufficient uncontroverted evidence to establish a prima facie case so as to shift the burden of proof to defendants, and defendants failed to offer any evidence to refute plaintiffs' claim of adverse possession."

Quite apparently, points I–A and I–B state no cognizable claims of error because they are mere abstract statements of law. *Wissmann v. German Evangelical St. Marcus Congregation of St. Louis,* 612 S.W.2d 138, 141 (Mo.App.1980).

Points I–C(1) and C(4) seem to contend that evidence of the recorded agreement entered into between appellants and the development company in 1969, unchallenged by any evidence from respondents, was sufficient as a matter of law to require that the court grant appellants the requested injunction. Points I–C(2) and C(3) appear to argue that respondents' easement rights, acquired when their predecessor in title bought Lot 4 from the development company, were extinguished by appellants' occupancy of the parcel for the statutory term of adverse possession. These subdivided points I–C must be considered separately in the groupings of C(1)–C(4) and C(2)–C(3) because they are mutually inconsistent. This follows because respondents' rights, if acquired by the deed from the development company in 1964 as points C(2) and C(3) assume, could not have been conveyed to appellants in 1969 by the

agreement from the development company as points C(1) and C(4) postulate.

Addressing the C(2)–C(3) point grouping first, the claim by appellants that respondents' easement was extinguished by appellants' adverse possession necessarily carries with it the unexpressed premise that respondents at one time owned an easement to locate a boat dock and moor it to the land in question. Appellants do not discuss or describe how this easement was first acquired by respondents or their predecessors in title. It obviously was not obtained by prescription because there was no use or attempted use prior to the present controversy. The evidence in the case yields only one arguable source for the creation of the easement. That is in the subdivision of the reserved shoreline tract and the insertion of lot numbers as shown on the plat of the Lake Winnebago subdivision. If this is the source of respondents' easement, the creation was by grant implied from the plat.

We interject at this point the observation that the present appeal poses no issue as to a declaration of the respective rights of the parties in the disputed strip. Appellants' petition sought only to enjoin respondents from their attempted use of the shoreline easement, not a declaration of appellants' interest. Respondents did ask the court to define their rights, but the judgment on the counterclaim was not appealed. In consequence, we are called upon here only to decide whether the trial court erred in refusing to enjoin respondents from *any* use of the property in question. If a declaration of easement rights was to be obtained, it could not have been accomplished in this suit to which the owner of the fee interest, the purported subservient estate, was not made a party.

Assuming for purposes of the point that an easement for shoreline access and a dock mooring was granted to respondents through their predecessors in title by the delineation described on the plat, appellants claim in points C(2)–C(3) that they have used and claimed the easement on an exclusive basis for more than ten years. This, they say, served to extinguish any easement respondents had.

■ The facts, taken most favorably to appellants' case, show that appellants' occupancy of the shoreline strip was exclusive only to the extent that appellants asserted their right to bar others from mooring boat docks on the property. Appellants claim only an easement subject to the fee ownership. By definition, an easement is not an exclusive interest in realty. Thus, the essence of appellants' claim is that for more than ten years, they used the easement rights appurtenant to respondents' lot while respondents did not and, as a consequence, respondents' easement was lost. Even were respondents to have had an easement acquired through the purported dedication inferred from the indication of lot numbers on the plat, a dubious proposition, respondents were not deprived of their rights by appellants' user. An easement created by grant is not lost by nonuser. *Denning v. Manley*, 610 S.W.2d 51, 57 (Mo.App.1980).

■ If a granted easement cannot be terminated by non-user, as the above cited case and numerous other authorities hold, it follows of necessity that the easement rights so granted are not involuntarily transferred when another purports to exercise those rights. This is not to say that an easement may not be abandoned, but proof of abandonment is not shown by mere nonuser. There must be evidence of an intention to abandon by the holder of the easement and an act by which that intention is put into effect. *Dalton v. Johnson*, 320 S.W.2d 569, 574 (Mo.1959). There was no such proof offered in this case. Moreover, if the respondents' easement rights had been abandoned, the benefit would not flow to appellants, absent something more, but would revert to the fee owner and expire.

■ The trial court correctly ruled that appellants were not entitled to an injunction against respondents on appellants' claim of adverse possession.

The second prong of appellants' contention as set out in points C(1) and C(4) relies on the document dated February 28, 1969 wherein appellants purchased the easement rights of Lot 4 from the development company. Appellants attempt to couple this

agreement with their use of the property thereafter as a basis to argue that if such be the only evidence in the case, they were entitled to the injunction sought against respondents. They rely on cases holding a proponent's prima facie case shifts the burden of going forward on the issue to the opponent.

Two principal obstacles stand in the way of this approach as a ground for appellants' claim. First, if the development company did create any "rights appertaining to Lot E-4 to locate a dock on said property" as the February 28, 1969 agreement assumes, those rights passed to the Markhams when they bought the lot in 1964. Where an easement constitutes an appurtenance to land, whether by express or implied grant or reservation, it passes with transfer of the land. *Beldner v. General Electric Co.*, 451 S.W.2d 65, 75 (Mo.1970). Respondents, through the Markhams, owned whatever boat dock rights were created. The development company was powerless to convey those rights after it had sold the lot in question and could not have done so without concurrence by the then lot owner.

The second obstacle to appellants' claim for an injunction against respondents lies in the failure of the 1969 agreement to attribute any exclusivity to the easement rights purportedly granted to appellants. Assuming the inability of the development company to assign appellants those rights held by the Lot 4 owners at the time, it is nonetheless possible that the company could have granted appellants different or concurrent rights of user by the agreement. The document does not otherwise purport to bar others from any use of the land and does not imply that only appellants have such use. Concurrence of easements is not alone any hindrance to the efficacy of both so long as the second easement is not inconsistent with the first. Any doubt as to the scope of the easement should be resolved in favor of free and untrammeled use of the land. *Kiwala v. Biermann*, 555 S.W.2d 663, 667 (Mo.App. 1977). In short, there is no basis in the plat or in the agreement relied on by appellants to contend that either barred the development company from granting other consistent easements for use of the same land.

As was observed earlier, this appeal does not present any issue calling for declaration of the easement rights of either of the parties, only the determination of whether appellants were entitled to an injunction excluding respondents from the exercise of any user rights as to the property in question. The 1969 agreement conveys no such exclusive right. At most, if appellants acquired any interest in use of the shoreline by the agreement, it was a non-exclusive right, first because the interest, if any, in the Lot 4 owners was vested and, second because the agreement described no exclusive right.

The trial court correctly ruled that appellants were not entitled to an injunction against respondents on appellants' claim based on an easement granted by the 1969 agreement.

The judgment is affirmed.

All concur.