W. C. MULLINS, Appellant, v. METROPOLITAN STREET RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, October 7, 1907.

1. **EASEMENTS: Right of Way: Grantee's Right.** The grantee of a right of way over land for a sewer has dominion thereover to the extent reasonably and conveniently required for the purposes of the grant, including free and unrestricted access to the land with right to prepare for the building of the sewer, and the use of the removed earth for necessarily filling, and after the work is completed the further right to enter the land in a reasonable manner for the purposes connected with the maintenance or reconstruction of the sewer; and the owner's proprietary rights are subjected to such servitudes and he cannot obstruct their access.

2. ———: ———: ———: **Obstruction: Digging Sewer: Instructions.** Where a grantee of a right of way for a sewer is compelled by reason of the character of the work to use transverse supports in order to prevent caving, he is not injured by the grantor's placing braces projecting into the sewer ditch for the purpose of supporting the structures on his abutting property; and instructions set out in the opinion relating to the grantor's liability for such braces are approved.

3. ———: ———: ———: Convenience: Effect on Servient Estate.
A grant for right of way for the construction, maintenance and
reconstruction of a public sewer confers on the grantee, by im-
plication, the things without which the grant cannot comfort-
ably be enjoyed; but the necessity of comfortable enjoyment
cannot create the right of way, and a mere convenience does
not pass as an incident of such grant unless it is also a necessi-
ty. So such grant for a sewer does not necessarily confer the
right to use the abutting land of a grantor as an approach to the
right of way and a support of material for the construction of
the sewer when said right of way may be reached from the pub-
lic highway at either end, and the grantor may remove from
his abutting land material placed thereon by the grantee for
the construction of the sewer.

Appeal from Jackson Circuit Court.—*Hon. James H.
Slover,* Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

(1) The court erred in giving defendant's instruc-
tion numbered 3. It is a comment upon the testimony
and singles out a certain fact and tells the jury that
fact alone will not entitle plaintiff to recover. (2)
Instruction numbered 4 given for defendant is erro-
neous for the same reasons. Said instructions are erro-
neous for the further reason that defendant did not
have the absolute right to place said tracks there so
as to obstruct plaintiff, without regard to the necessity
for so doing, and without regard to the reasonableness
or unreasonableness of the use by defendant of its prop-
erty. (3) Instruction numbered 5 given for defend-
ant is erroneous. The grant of the right of way for
the sewer carried with it by implication at least every
thing necessary to render the easement capable of enjoy-
ment to the full extent. Goddard's Law of Easements,
p. 109; Fitzpatrick v. Mik., 24 Mo. App. 435; Prescott
v. White, 21 Pick. (Mass.) 341; Prescott v. Williams,
5 Metc. (Mass.) 435; Richardson v. Paul, 15 Gray
(Mass.) 387; Snyder v. Warford, 11 Mo. 513.

*John H. Lucas, Charles A. Loomis* and *Ben F. White* for respondent.

(1) Plaintiff's contention that defendant's instruction numbered 3 is a comment on the evidence and for that reason erroneous, is without substantial merit. (2) The same remarks will apply to so much of plaintiff's second assignment as has reference to its being a comment on the evidence. (3) It is not claimed that the defendant had any right to needlessly or purposely put obstacles in the way of plaintiff, but that it did have the right to protect its own property. (4) Even if it were conceded that these instructions, as an abstract proposition of law, declare too broadly the rights of defendant (which is not conceded), even then the plaintiff is not injured. (5) When, upon a view of the whole record, it is clearly manifest that the judgment is for the right party, it will not be reversed, although errors may have been committed. Bassett v. Glover, 31 Mo. App. 150; Nelson v. Foster, 66 Mo. 381; Fairbanks v. Long, 91 Mo. 628; Fitzgerald v. Barker, 96 Mo. 661; Bushey v. Glenn, 107 Mo. 331; Henry v. Railroad, 113 Mo. 526; Burns v. Liberty, 131 Mo. 372; State v. Jennings, 134 Mo. 281.

JOHNSON, J.—Plaintiff, who built a sewer for Kansas City, alleges in his petition that defendant unlawfully obstructed him while he was engaged in the prosecution of the work and thereby damaged him in the sum of fifteen hundred dollars, for which he prays judgment. A trial before a jury resulted in a judgment for defendant and plaintiff appealed. The errors assigned relate to the instructions given by the court, it being the contention of plaintiff that the law applicable to the facts of the case was inaccurately and prejudicially declared in the instructions given at the instance of defendant.

In 1896, the owners of a tract of land which ad-

joins the right of way of the Kansas City Belt Railway executed and delivered to the city a deed by the terms of which they conveyed for a nominal consideration "the perpetual right of way for a sewer over, along and through" the south ten feet of the tract. The length of the right of way thus conveyed is 683.14 feet. The deed contains the following covenants:

"It is hereby expressly understood and agreed that the party of the second part (the city) shall pay all damages that may be done to the property of the parties of the first part by reason of the construction, maintenance, repair and reconstruction of said sewer, and that the ground shall be placed in the same condition in which it was at the commencement of said work. The party of the second part shall have the right at all times to go upon the land herein described (the right of way is the only land described), to construct, repair and reconstruct the said sewer."

"The parties of the first part shall have the right at all times to make connection for the drainage of any and all houses on the property through which this right of way is granted."

"Nothing in this deed shall be so construed as to prevent the free and unrestrained use by the party of the first part of the ground about and adjoining said sewer except in such manner as would interfere with the free and unrestrained use of said sewer by the public."

In April, 1901, defendant, a street railway company, acquired by deed the fee simple title to the property subject to the right of way and, in the summer of that year, began the construction of large car barns thereon. The buildings were placed on the north side of the land, about sixty feet north of the north line of the sewer right of way. Defendant graded the whole tract to the line of the Belt Railway preparatory to the construction of the buildings and of switch tracks

for use in switching cars to and from the barn. At the instance of defendant, the Belt Railway (a steam railroad) laid a switch track from its line across the sewer right of way and on to the land of defendant, for the convenient handling of cars and material and other freight for the use of defendant on the premises. When the car barns were nearing completion, defendant began the construction of its switch tracks. It laid the main track east and west immediately north of the sewer right of way and parallel thereto and from it ran some fifteen tracks north into the barn. During the progress of the work, defendant built a substantial fence on the line between the sewer right of way, and that of the Belt Railway and also set some six or seven iron trolley poles at regular intervals along the center of the sewer right of way, but about the time work was begun on the excavation for the sewer, took up these poles and set them immediately north of the fence. The poles were intended to support the power wire necessary to the operation of cars on the main switch track we have described.

In October, 1901, plaintiff entered into a legal contract with Kansas City by the terms of which he undertook to construct a sewer about fifteen thousand feet in length, the course of which lay over the right of way mentioned. The sewer was to be circular in form, constructed of vitrified brick and, where it passed over defendant's land, was to be five feet ten inches in interior diameter. It required the excavation of a trench about seven and one-half feet wide and twelve feet deep.

In February, 1902, plaintiff hauled brick to be used in the work and piled them on the land of defendant in a line about ten feet north of the sewer right of way. At that time the switch tracks had not been built, but the beginning of work on the sewer was delayed several months by a cause we do not deem it important to state and, before it was begun, defendant found it necessary

to build its main switch track and as the brick were in the way, removed them from its land to the right of way. It is claimed by plaintiff that the brick (over seventy thousand in number) were recklessly thrown by defendant's employees instead of being piled carefully and then were covered with dirt thrown from the excavation made for the laying of the track. The removal of the brick is admitted by defendant's witnesses who deny they were roughly handled, covered with dirt, or in any wise injured.

After plaintiff began to dig the trench which, of necessity, was so close to the line of the iron trolley poles described as to endanger their stability, defendant, to support the poles, used braces consisting of heavy wooden beams laid across the right of way about one foot below the surface and anchored to supports on defendant's land. It is claimed by plaintiff that the beams constituted an obstruction which prevented the use of teams and scrapers in excavating and necessitated the shoveling of the earth and its removal by wheelbarrows. It is also claimed that plaintiff was put to additional expense from the fact that, as no space was left on defendant's land for piling the brick or for ingress and egress of workmen and teams, the entire work had to be prosecuted in the narrow space afforded by the right of way. Thus hampered, plaintiff built the sewer in sections, i. e., he excavated the trench from one end of the right of way, a distance of twenty-five or thirty feet, wheeled out the shoveled earth which could not be thrown to the sides and then built the sewer in the trench, after which, he excavated for another section, using the earth taken therefrom to fill over the brick work in the first, and so on, until the sewer was completed.

Relative to the obstruction to the convenient and economical doing of the work interposed by the supports to the trolley poles, it was shown by defendant that the

presence of the switch track laid by the Belt Railway offered an obstacle to the free use of scrapers or excavating machines and also that, owing to the depth of the trench and the character of the soil through which it was dug, it was necessary to support the trench walls by cross pieces to prevent caving and that a number of such pieces were in use at the time defendant put in the braces for its trolley poles.

Plaintiff seeks to recover the amount of damages resulting from the denial to him of the use of defendant's land as a base of operations and also from the obstructions placed by defendant across the right of way. It is not seriously contended by defendant that the installation of the switch tracks, trolley poles and their supports did not materially increase the cost of building the sewer over what would have been incurred had the land been preserved in its natural state, but it is insisted that nothing more was done than was imperatively demanded by the use for which the property was purchased, and that defendant, as the owner of the fee, had the right, not only to the free use of the land not described in the deed to the city, but also to the use of the strip over which the right of way was given, in a manner which might impair but not destroy the easement.

In our discussion of the questions of law arising from the facts stated, we will consider first, the rights and duties of the parties with respect to the land specifically described in the deed and then the question of the right of the city and its contractor to the enjoyment of an implied secondary servitude of the other land of defendant to afford a more convenient and economical use of the specified grant than otherwise was offered.

The deed to the city did not convey the fee to the land described but only a right of way for the construction, maintenance and reconstruction of a public sewer, As grantee of this right, the city acquired dominion over

the land to the extent reasonably and conveniently required by the purpose of the grant.   By necessary implication, it was given the privilege of free and unrestricted access to the land, the right to prepare it for the building of the sewer, the use of the removed earth for necessary filling and, after the work was completed, the further right to enter the land in a reasonable manner for purposes connected with the maintenance or reconstruction of the sewer.   The owner of the fee, while possessed of proprietary rights over the land, subject to the right of way, was not justified in exercising them in a manner to impair or obstruct the convenient enjoyment of the easement.   In the use of the land, the rights of the owner of the easement were paramount to those of the owner of the fee until the reasonable purposes of the grant were satisfied.   Therefore, the right of defendant to erect its trolley poles on the right of way could not be exercised at all if the presence of the poles materially impeded the work of the contractor in laying the sewer and it is immaterial that the placing of the poles on the right of way was necessary to the use which defendant was making of the adjoining property.   Necessity, however great, could not give to defendant the right to invade the property rights its predecessor had granted.   If the poles and the supports for them which defendant placed across the ditch constituted an obstruction to the work of building the sewer to an extent resulting in pecuniary loss to the contractor, a cause of action arose in favor of the latter for the recovery of the damages thus sustained.

On behalf of plaintiff, the court instructed the jury to find for him if they believed from the evidence that defendant "placed poles and braces over and across said right of way for said sewer and that by reason thereof plaintiff . . . was put to greater trouble and expense in constructing said sewer than he would have been put to but for said acts of defendant."

At the instance of defendant, the court instructed that if "defendant placed braces across the right of way for said sewer to support its trolley poles which were erected south of said sewer and that plaintiff, while constructing said sewer, placed braces or other obstructions in said sewer, in and across said sewer, to sustain the walls of said sewer and prevent the same from caving or falling in, the defendant is in no way liable for any damage or loss caused by the braces or obstructions put in said sewer by plaintiff, nor for any loss or damage which would have been sustained by reason of the obstruction put in by plaintiff notwithstanding the obstruction put in by defendant."

These instructions are in harmony with the principles we have just declared. In effect, the jury was told to return a verdict for plaintiff on finding that the trolley poles and braces were placed by defendant on the right of way in a manner to obstruct the building of the sewer. We have already mentioned the evidence adduced by defendant to the effect that owing to the character of the ground and the depth of the trench plaintiff found it necessary to put braces between the walls to keep them from caving in. If this were the fact, it is obvious that plaintiff should not recover on the ground that the poles and braces placed by defendant constituted an obstruction to the work. If plaintiff found it necessary to put in braces to hold the walls of the ditch in place, such braces prevented the use of teams and scrapers and it would be unjust to impose a liability on defendant on account of an expense which plaintiff would have incurred regardless of the presence of the trolley poles and their supports in the right of way.

The instructions relating to the issue under consideration are free from error.

Passing to the other issues in the case, we find the most important question relating to them to be that of the right, if any, of the city to the use of defendant's

land adjoining the right of way in the prosecution of the work of building the sewer. It is argued by plaintiff that, as an implied incident to the thing granted, he had the right to use defendant's land for the storing of material, for ways of access to the work, and to furnish room for the convenient and economic operation of teams and scrapers and grading machines. This right, he contends, was superior to that exercised by defendant in the building of the switch tracks appurtenant to the car barns. In other words, plaintiff says, in effect, he was entitled to the most convenient and inexpensive means for the prosecution of his work, and that defendant could not enjoy a use of its own property that would enterfere in any manner with that convenience. Certainly no such predominant right is to be found in the express terms of the grant, and it remains to be ascertained if its existence should be presumed as a necessary implication from the thing expressly granted.

"If you grant anything, you are presumed to grant to the extent of your power that also without which the thing granted cannot be enjoyed." (*Cuicunque aliquis quid concedit concedere videtur et id sine quo res ipsa esse non potuit.*) [Broom's Legal Maxims, 479; Shep. Touchstone, 89 Cap. 5; Fitzpatrick v. Mik, 24 Mo. App. 435.] This maxim of the common law has been applied in numerous instances to give to a landowner an easement over the adjoining land of his grantor. Thus, where a man grants a close inaccessible except over his own land, he impliedly grants a right of way over that land, since the law would presume he would not grant an estate and withhold the means by which that estate might be enjoyed. The existence of a necessity of such incidental means is the ground on which the intention to grant them is implied, and it was held in Fitzpatrick v. Mik, supra, that "the necessity which supports such an easement has never been understood to be an

absolute, overwhelming necessity, but as the books express it, a necessity of comfortable enjoyment of the thing granted."

But it must be borne in mind that the necessity does not, itself, create the right of way. As we before remarked, no necessity can justify one man in appropriating the property of another. The necessity is the fact from which the law will presume an intention on the part of the grantor to grant the right of way, and if no necessity exist, no such intention may be presumed. [Nichols v. Luce, 24 Pick. 102.] Nor can a presumption of an incidental grant be entertained where the thing expressly granted contains within itself adequate means by which it reasonably may be enjoyed. Thus, if I should grant to B a part of my farm accessible to the public highway, the fact that a more convenient way might be laid over the land I retain would not imply the grant of such right of way as an easement belonging to the land conveyed. A mere convenience does not pass as an incident to the grant unless it is also necessary. [Lyman v. Arnold, 5 Mason 195.] Should we find that the land conveyed in the deed for right of way purposes afforded sufficient, though not the most convenient means for a reasonable enjoyment of the grant, we cannot escape the conclusion that the implied grant of other rights and privileges was not within the intention of the parties. Had the city desired to possess greater conveniences than those presented, it should have stipulated for them in the deed. [Nichols v. Luce, supra.]

Applying these principles to the facts before us, we find nothing on which to predicate a presumption that the grantors of the right of way intended to impose any servitude on any land other than that described in the deed. Reasonable facilities for building the sewer were open to plaintiff without encroachment on the adjoining land. The strip granted was accessible from the

ends and the event demonstrated that these means of access permitted the work to be accomplished in a practical manner.  If, as a matter of fact, the walls of the excavation required transverse supports, there is room to doubt that any more economical method than that followed was available.  But, however, this may be, we are of opinion that no such necessity for using the adjoining land existed as would presuppose an intention to burden it with an incidental servitude.  Defendant had the right to use that land in a way that would prevent its use by plaintiff and to remove the brick to the right of way.  In removing them, it was required to handle them with reasonable care and would be liable to respond in damages if the brick were damaged by its failure to observe such care.  We have carefully examined the instructions and find they are consistent with the views expressed.

Accordingly the judgment is affirmed.  All concur.