ANDREW STOTZENBERGER v. WILLIAM PERKINS, Appellant.—58 S. W. (2d) 983.

Division One, March 16, 1933.

*Irwin & Bushman* and *Harry L. Buchanan* for appellant.

394

*Pendleton & Martin* for respondent.

HAYS, J.—This is a suit for injunction. Plaintiff prevailed in the circuit court and the case is here on defendant's appeal. The parties are adjoining proprietors of agricultural lands. The controversy grew out of conflicting claims with regard to a parcel of land described in the record as a roadway. The plaintiff owns the west one-half of the northwest quarter of section thirteen (13); the defendant owns an eighty-acre tract adjoining that tract on the north and described as the south one-half of the southwest quarter of section twelve (12); all being in township forty-seven (47), range nineteen (19) in Cooper County. The roadway in question has its northern terminus on the division line between the respective properties and its southern terminus at the southeast corner of plaintiff's entire tract and there connects with a public road lying adjacent to

plaintiff's south boundary line and running east and west. The plat printed herewith will aid in understanding the situation.

The plaintiff formerly owned all the lands above described. He conveyed the whole by warranty deed dated September 9, 1915, to one B. J. Young, who thereafter by warranty deed of September 17, 1921, duly recorded, reconveyed to the plaintiff the eighty acres situate in section 13 and first hereinabove described. In this deed there appears in the description, after the designation of the west one-half of the northwest quarter of section 13, and the township and range, the following clause: "*except therefrom a roadway twenty feet in width over and across said land described as follows*: beginning at a point in the public road at the southeast corner of the southwest quarter of the northeast quarter of section 13" (Here occurs a metes and bounds description which for brevity we omit, since the parcel as thus described is delineated on the plat.), "*which said roadway is reserved for the use and benefit of the grantors herein their heirs and assigns.*" (Italics are ours.)

Young thereafter, by warranty deed dated April 8, 1924, conveyed to one J. R. Waddington "the west one-half of the southwest quarter of section 12; also beginning" (from that point on the description by metes and bounds of the roadway in controversy is the same as that in Young's conveyance to plaintiff above mentioned but without the exception or reservation clause contained in the latter and quoted and italicized above.) Waddington on February 16, 1928, conveyed to Perkins, the defendant, by the same description as in the deed from Young to Waddington.

From the year 1921, when Young reconveyed to plaintiff the south eighty acres on which the roadway lies, until 1928, when the defendant acquired the north eighty acres, upon which the northern terminus of the roadway ends, two gates were maintained by the plaintiff across the roadway but at what points thereon the evidence does not specifically show but does show by implication they were on plaintiff's south forty acres. For some years before defendant's acquisition of the north eighty acres occupants of that tract passed through the gates in passing to and from the public highway hereinabove mentioned, using a somewhat crooked route and without being confined to the strip in question. Defendant himself had used this route for a time after acquiring his tract, and shortly, perhaps a few months, before the inception of this suit he removed the gates mentioned above. Down to the time of that occurrence neither the defendant nor his predecessor in title had used the strip in controversy for any purpose. In fact before it would be adapted to use for passage some trees, brush and rock would require to be removed and the construction of a bridge at one point would be necessary. Shortly after defendant's removal of the gates, and in March,

1929, the plaintiff, actuated by such removal, it may be inferred, fenced the roadway on each side thereof, placing a gate on either side somewhere in that portion which runs diagonally and divides plaintiff's north forty acres into two parts, leaving a triangular parcel of some ten acres on the northeast corner. Shortly thereafter plaintiff began to pass through the gates and across the strip in hauling hay from time to time from the parcel on the west, where it had been grown and stored, to his triangular parcel and through the same and thence through the premises of an adjoining proprietor to a public road which led to the town where plaintiff resided. Thereupon the defendant asserted claim of ownership in fee of the strip, repeatedly obstructed the gateways, thereby preventing plaintiff's passage, and threatened to continue so to do; in some places felled trees growing on the roadway and in others plowed up the soil, seeding the same to corn and cultivating the crop; and denied plaintiff any right to cross said roadway at any point. In consequence thereof the plaintiff in the month of May following instituted this suit.

The plaintiff's petition alleged the facts hereinabove stated in substance, and the greater weight of the evidence supported its allegations. It further alleged damages in the sum of $100 and lack of remedy at law, praying for a temporary restraining order, a permanent injunction and general relief.

By answer defendant admitted the acts of obstruction charged and his continued objections made to plaintiff's entering upon the strip; claimed ownership in fee of the roadway strip; and averred that plaintiff's act in undertaking to appropriate the crossing over the same constitutes a taking of defendant's property for private use without compensation, contrary to Section 20, of Article II of the Constitution of Missouri.

■ ■ ■ ■ The chief contention of defendant (appellant) is that the plaintiff owns no interest or estate in the strip, that the defendant owns the same in fee. That position is based on the claim advanced that the clause in plaintiff's deed, when properly construed, constitutes an exception and not a reservation. It is argued that the latter part of it beginning with the word *reserving* is repugnant to the preceding part and must therefore be rejected; 18 Corpus Juris, page 268 being cited in support. A sufficient answer to that contention is that such rule does not prevail where there is room for construction, nor will it be extended to a case of repugnancy between parts of the same clause. [18 C. J. sec. 227.] It is true that considered apart from the remainder of the clause the words *"except therefrom"* would, as the defendant contends, create an exception which would apply to the land itself and not to the nature or amount of title to be conveyed, for the word "except" is the

technical term usually employed by skilled conveyancers to denote an exclusion of a part of the subject of the grant next preceding, an existent thing, and the complete exclusion of such part from the operation of the conveyance. [8 R. C. L. 1090.] But it is also true that the latter part of the clause which employed the word reserved, viz, *"which said roadway is reserved for the use and benefit of the grantors herein their heirs and assigns,"* was accurately designed and effective to express a technical reservation of a right of use which the grantors previously had in the land that is the subject of the clause. [Snoddy v. Bolen, 122 Mo. l. c. 486, 24 S. W. 142, 25 S. W. 932; 8 R. C. L. p. 1091.] The one part cannot be deemed to be repugnant to the other as the defendant contends, since each is a part of the same clause. [18 C. J. sec. 227.] The clause is, however, ambiguous from the use of the two words, "except" and "reserving," each having a legal significance different from that of the other. The purported exception is of a *roadway;* the purported reservation is of the selfsame roadway. The dominant word in the clause is roadway, used at the beginning of the detailed description and again at the close.

 It is further contended that the words designating the use the strip was intended to be put to are descriptive only, and Rushton v. Hallett, 8 Utah, 277; Mun v. Worrall, 53 N. Y. l. c. 46, and Grooms v. Morrison, 249 Mo. 545, 155 S. W. 430, are cited. In the case of Mun v. Worrall, supra, the clause interpreted was clearly an unambiguous exception which excepted, by force of that term alone, from the premises conveyed such parts as had been taken for public roads. So, too, in the first case. They have little, if any, application here. In Grooms v. Morrison, supra, a widow inherited from her deceased husband dower in fee in his land under the Homestead Law of 1865, and her dower was afterward assigned to her in partition. She conveyed the land by quitclaim deed, correctly describing the same, and the only language the deed contained, said the court, which cast any doubt upon the intent of the grantor to carry a fee simple title is the clause which immediately follows the description of the land, to-wit: " 'It being the dower interest in the land belonging to the Grooms estate.' " We held (l. c. 551-553) that the pronoun "it" referred to the title to be conveyed and not to the land itself. The holding was based in part upon the fact that the widow had "collected all the fire insurance on the house just as though she owned the title in fee to the land where the house had stood." We think that the language and the circumstances there in judgment are so dissimilar to the provision and the facts presented in the case at bar as to render that case inapplicable here.

 In the instant case the clause must be considered as a whole,

just as deeds and other instruments in writing are to be considered, in order to arrive at the intention of the parties to the deed, which intention when arrived at must control; all the words are to be considered, and conflicting words should be harmonized and their meaning ascertained, if possible to do so without violating some rule of law: for such is a cardinal rule of construction. [McCullock v. Holmes, 111 Mo. 445, 19 S. W. 1096; Walton v. Drumtra. 152 Mo. 489, 54 S. W. 233; 8 R. C. L. sec. 93.]

■ So considering the clause, we think the parties to the deed intended to reserve a private roadway merely, i. e., a right to use a part or the whole of the strip for a road, which is a reservation in the legal sense of that term, and that the word except was employed in the sense of reserving and not in its technical meaning. Those words are often used as synonyms, and whether a provision is an exception or a reservation depends not upon the use of a particular word, but upon the nature and effect of the provision itself, in its operation on the subject of the grant. [Carter v. Foster, 145 Mo. 383, 47 S. W. 6; 8 R. C. L. sec. 149; Leavitt v. Towle, 8 N. H. 96; Kister v. Reeser, 98 Pa. St. 1, l. c. 4-5.]

In the Carter case, supra, we construed an expressed exception in a deed of a street, described by metes and bounds, as a reservation. In Leavitt v. Towle, supra, the expressed exception was a road laid out through the premises. The court held that a road was a right of passage merely, and the soil over which it passed would not be transferred by a conveyance of the road. It was stated in the deed construed in Kister v. Reeser, supra, that the grantor "doth reserve a road ten feet wide along the line of Joseph Burger." There were no extrinsic facts. That court interpreted the meaning of the word "road" in language applicable here, as follows: "The word road has never been defined to mean land. . . . Its sense in this deed is very clear. Taking the entire clause, with reference to the grant, it means a reservation of a way. This is as plain as if the word way were in place of road. Lawyer and layman alike would understand the word road in this clause in the same sense as it is used in the statutes providing for grant of 'private roads.' A private road, obtained by proceedings under those statutes, is a mere way, the owner of the way having no interest in the land." The word road is obviously less definitive than the word roadway.

Moreover, the word heirs is not without significance. It must be regarded as used for some purpose. At common law that word was necessary to create an easement in fee by way of reservation, but not to create it by way of exception if the grantor owned the fee at the time of the conveyance (Claflin v. Boston A. & R. Co, 157 Mass. 489, 32 N. E. 659; 9 R. C. L. sec. 20, pp. 752-3), and absent that word a life estate only was created. [Burr v. Mills (N. Y.), 21

Wend. 290.] Though our Statute of 1845 (Sec. 3106, R. S. 1929), changed the common-law rule with respect to conveyances (Mc-Cullock v. Holmes, supra, 1. c. 448), yet the word "heirs" in the clause referred to is consistent with the remainder of it and tends to show an intention that the roadway should be perpetual. [Mc-Cullock v. Holmes, supra, 1. c. 447.] In view of the surroundings and the situation of the lands the provision in the deed created an easement in the strip described, an easement appurtenant to the tract of the defendant upon which the northern terminus of the roadway lies. [Downey v. Sklebar, 261 S. W. 697.]

The subsequent conduct of the parties to the contract does not, as we regard it, indicate that they put any different construction on the grant than ours, though the defendant contends the contrary. It seems that before this grant the use made by the defendant and his predecessors in title of the crooked route referred to hereinabove, in order to reach the public road mentioned, was under a mere license. The strip of land, purely agricultural in character, was not shown to have any value or adaptability save for purposes of agriculture. A grant from the plaintiff of the strip in fee would, as is obvious, have put plaintiff's premises under considerable disadvantage in the duty of maintenance of division fences alongside and in rendering the triangular parcel wholly inaccessible to and from the other parts of the whole—a circumstance bearing upon intention. So that the facts and circumstances of the case extrinsic to the deed, which are properly taken into account, lend support to the interpretation we have placed on the provision in question.

As the owner of the dominant estate the defendant has under our interpretation of the deed, the right to put and maintain the roadway strip in a condition for passage thereon and the right to a free passage on such portions or all of the way as he thinks proper or necessary to make repairs, or for any purpose connected with the enjoyment of his estate; but the plaintiff as owner of the servient estate is under no obligation to maintain or repair. [9 R. C. L. sec. 51.] On the other hand there remains with plaintiff the right of full dominion and use of the strip except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant easement. [Ibid., sec. 54.] That right being of such an extent, includes the right to fence the strip and to cross it when and where he may please to do so, observing the limitation stated. [Ann. Cas. 1915C, 1192, note.]

Our interpretation of the deed essentially disposes of the constitutional question which defendant sought by his answer to inject into the case, and also renders it unnecessary to take other than this casual notice of certain false issues which were entirely outside the pleadings in the case. There are, however, two further

assignments remaining, one of which is that the plaintiff failed to prove a title emanating from the United States Government. That will be conceded. However, the title deeds summarized hereinabove were all in evidence, introduced by the defendant's counsel. They are again set out in the defendant's brief, with a statement that the plaintiff was the owner of all the lands when in 1915 he made the first one of the deeds. In a colloquy between the respective counsel when this deed was offered defendant's counsel made the statement, "I've said all the time Andrew Stotzenberger is the common source of title." Thus a common source of title was both proved and admitted. Either alone, the proof or the admission, would have been sufficient. [Gordon v. Million, 248 Mo. l. c. 166, 154 S. W. 99.]

Lastly it is contended, in substance, that the award of damages in the sum of fifty dollars was error, in that the evidence discloses no substantial damages estimable in money, and hence only nominal damages for the invasion of a legal right should have been awarded. The evidence in that respect is indeed meager and consists in this alone: The plaintiff's witness Stecklein, whose premises adjoined the triangular parcel, said the parcel was pasture land, which plaintiff could not use (because of defendant's obstructions mentioned), the summer of 1929; that the witness himself had been pasturing it, having rented it. Asked what rent he paid, he answered, "I have given him as high as fifty dollars a year for it; I don't have to cross the roadway to get to it." The plaintiff succeeded in hauling his hay across the way, though in doing so he was put to some inconvenience in removing the obstructions defendant had placed at the gates. The evidence discloses no monetary loss of plaintiff.

Accordingly the judgment is affirmed on condition that the plaintiff file in this court within ten days from this date a *remittitur* in the sum of forty-nine dollars, otherwise the judgment is reversed and the cause remanded.

All concur.