Robert HIGDON, d/b/a Higdon's Mobile Village, Appellant,

v.

KENTUCKY GAS TRANSMISSION COR-PORATION, Appellee.

Court of Appeals of Kentucky.

Nov. 21, 1969.

As Modified on Denial of Rehearing Jan. 30, 1970.

William O. Bertelsman, Bertelsman & Bertelsman, Newport, for appellant.

Robert E. Ruberg, O'Hara, Ruberg & Ce-trulo, Covington, E. Dean Gerwig, Charleston, W. Va., for appellee.

DAVIS, Commissioner.

At issue on this appeal is the construction of an instrument creating a pipeline right-of-way easement and whether appellant's use of the surface near the buried pipeline constitutes an unreasonable burden upon the easement. The trial court adjudged the reasonable and proper width of the easement to be thirty feet and permanently enjoined the appellant from maintaining a concrete pad within the area encompassed in that thirty-foot strip. This appeal challenges the propriety of the trial court's rulings.

In 1908 appellant's predecessor in title granted an easement to appellee's predecessor in title which provided in part:

"For and in consideration of the sum of one (1) dollars, in hand paid, * * * [grantors] do give and grant unto [grantee] the right of way to lay a pipe line or pipe lines for the transportation of gas or oil, and to construct telephone or telegraph lines, with the privilege and right to maintain, repair and replace, operate, use and finally remove the same, * * *."

The deed of easement did not prescribe the route, width, or depth of the right of way. Within a year or two after the original easement was granted, a twenty-inch gas pipeline was installed. That line was constructed with mechanical or bolted couplings. In 1963 the original line was replaced by the now-existing line which is also a twenty-inch gas transmission line in which the seams are welded.

Higdon acquired his land in 1956 subject, of course, to the burden of the 1908 easement. In 1962 Higdon began construction of a mobile-home park on the proper-

ty. Incident to the development of the tract as a mobile-home park, Higdon constructed a substantial sewer plant, a portion of which lies within four feet of the pipeline. He also made a dirt fill ranging from twenty to thirty feet in height over the pipeline at another point on the easement within his boundaries. In another area Higdon constructed a six-inch thick concrete street over the pipeline. The appellee, Kentucky Gas Transmission Corporation, made no protest concerning any of these activities of Higdon. However, when Higdon began the installation of a concrete pad, ultimately to be used as the site of a mobile home, the company protested and this litigation ensued. The evidence reflects that the concrete pad, at its nearest juncture with the pipeline, will be four feet from the pipeline.

The appellee conceded that the presence of the pad, even with a mobile home on it, would not impede the company's periodic patrolling of the line. It also admitted that there is no reasonable probability of any necessity for replacing or removing the line within the foreseeable future. One witness estimated that such an eventuality would likely not occur before the year 2025. Thus, the crux of the matter is whether Higdon's maintenance of the pad with a mobile home on it will so hamper the company in the exercise of its right and duty to *repair* the pipeline as to constitute an unreasonable burden. In this regard the record demonstrates that no material impairment in the company's exercise of its right and duty to repair will result from the mere proximity of the concrete pad. It is only if there is a mobile home located on the pad that the company anticipates material hindrance in its performance of the necessary procedures to effect prompt repair of the line.

It is of some significance that the company's records reflect that only five leaks have occurred in the company's 500 miles of transmission line in the past fifteen years. Such a circumstance strongly suggests that the probability of repairing a

leak at the site of Higdon's pad is not very great. Nevertheless, such an event could occur.

In an apparent effort to satisfy the company's apprehension of interference with its rights to repair, Higdon related that he would require any lessee who placed a mobile home on this particular pad to agree to remove it from the pad on short notice so that the company's procedures would not be interrupted or affected.

The trial court concluded that "the reasonable and proper width of the easement * * *, considering the purpose and character thereof, for which purpose said easement was initially granted, and of sufficient dimension to be safe for such purpose, is 30 feet; * * * the construction of a concrete slab or pad within the area defined as the right-of-way is an unreasonable use of his property by the owner of the servient estate, is a burden upon the easement and in violation of the rights of the owner of the dominant estate, * * *."

Pursuant to that finding, the trial court granted injunctive relief to the appellee and ordered Higdon "to forthwith remove from the right-of-way as herein defined, the concrete slab or pad constructed therein or thereon, and thereafter immediately restore the ground thereunder to a condition as near to the condition as it was prior to said construction as is possible under the circumstances; and said defendant is now permanently enjoined and prohibited from constructing any concrete slab or pad, or of placing any mobile home, within or upon such right of way."

The trial court and the litigants adverted to several precedents dealing with the respective rights of the dominant and servient owners of easements which fail to fix specific location or width. One such decision, quoted in the trial court's opinion, is Blair v. City of Pikeville, Ky., 384 S.W. 2d 65. In Blair it is said in part:

"It is noted that the easement did not contain language fixing its precise loca-

tion, nor were details inserted fixing its width, depth or other specifications. In such circumstances, reason and authority dictate that the rights obtained by the dominant owner are those necessary for the reasonable and proper enjoyment of the easement. By parity of reasoning, the owner of the servient estate retains the right of full dominion and use of his land, except so far as a limitation of his right is essential to the fair enjoyment of the easement. Maxwell v. McAtee, 9 B.Mon. (48 Ky.) 20; 28 C.J.S. Easements § 75; Horky v. Ky. Utilities Co., Ky., 336 S.W.2d 588; 17A Am.Jur., Easements, § 112; Vol. 3, Tiffany on Real Property, 3rd Ed., § 803.

"The principles involved were recognized in Louisville & N. R. Co. v. Pierce, Ky., 254 S.W.2d 943, in which it is said:

" 'Generally, the rule has been established that if an easement is granted or reserved in general terms which do not fix its location the owner of the servient estate has the right in the first instance to designate the location of the easement. The right, however, must be exercised in a reasonable manner with due regard to the rights of the owner of the dominant estate.'

"Thus, it may be said that the rights and duties of the dominant and servient owner are correlative; neither may unreasonably exercise rights to the injury of the other. Cf. Central Ky. Natural Gas Co. v. Huls, Ky., 241 S.W.2d 986, 28 A.L.R.2d 621." Id. 384 S.W.2d 67.

■ We remain persuaded that the principle above recited is sound. The essence of the principle is found in the last portion of the just-quoted citation. It embraces the concept that the dominant and servient owners have correlative rights and duties which neither may unreasonably exercise to the injury of the other. The several cases dealing with the question have recognized the same concept. It is necessary in each such case to examine the particular facts and circumstances to determine what rights and duties inure to the owners of the dominant and servient estates. We need not undertake analysis of the various cases, many of which are cited in Blair v. City of Pikeville, Ky., 384 S.W.2d 65.

■ In the present litigation it is undisputed that the appellee company permits, as a matter of policy, the construction of streets and parking lots over the exact site of the pipeline itself. There was evidence that along this same pipeline, and within a relatively short distance from the Higdon property, the company replaced an existing pipeline in 1963 within six feet of the corner of a concrete motel building. As noted, the company has made no protest and makes none now as to Higdon's construction of a concrete street over the pipeline nor of his overburdening it with a dirt fill and placing a sewer plant in proximity to it. It is difficult to reconcile the company's permitting such usages with its present contention that the maintenance of a mobile home on the concrete pad is too burdensome for it to tolerate. Recalling the legal principle which governs the matter, it seems to us that the company seeks an unreasonable exercise of its easement right to the injury of the servient owner. Doubtless, from the company's standpoint, the existence of a thirty-foot easement is an ideal situation. The company could have acquired such an easement, either by negotiation or condemnation, but in the exercise of its discretion preferred to acquire the nonspecific right of way now under consideration.

As respects the question of safety and the public's interest in an adequate gas supply, there is no satisfactory showing that the proposed usage by appellant will have any material effect. To permanently enjoin the use of the servient owner's estate as provided by the judgment on appeal is to visit an unreasonable injury upon the servient owner, unless it may be said that the rights of the dominant owner reasona-

658

bly require such relief. In balancing the equities and the correlative rights and duties of these owners, it is our conclusion that the trial court erred in affording injunctive relief in these circumstances.

In summarizing the respective postures of the dominant and servient owners, it will be recalled that the possibilities of the company's needing to repair the line are quite remote. Moreover, it is shown that no material impediment to that right will occur even with the concrete pad in place if no mobile home rests on the pad when the repair is being made. It appears that such a mobile home may be removed from the pad upon short notice, which will be within any time schedule required for the company's expeditious repair of the line. Opposing this is the obvious loss in perpetuity so far as the servient owner's use of the property is concerned. In all these circumstances, it seems plain that the company's effort to maintain dominance over the proposed use of the servient estate is unreasonable and unjust.

We are mindful of the appellee's argument that Higdon's assurance that he will require any lessee of the pad to agree to prompt removal of a mobile home will not assure such removal, especially as respects any future owner of the property. The trial court will modify its judgment to require Higdon to execute and deliver a recordable instrument with an appropriate provision, as a covenant running with the land, to assure that any lessee of the mobile-home pad in question will take a lease thereof subject to the burden of promptly removing the mobile home from the pad upon timely notice in case of the company's need to make repair in the area. The judgment will direct that appropriate *lis pendens* notice of the encumbrance be filed in the proper office for recording.

The judgment is reversed with directions to enter a new judgment in conformity with the opinion.

All concur.