CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Plaintiff-Appellee, *v.* L. E. DAVIS, d/b/a Holiday Inn of Benton, Defendant-Appellant.

Fifth District   No. 79-400

Opinion filed July 1, 1980.

William E. Aulgur, of Eldorado, for appellant.

William J. Novick, of Fowler & Novick, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, L. E. Davis, d/b/a Holiday Inn of Benton, appeals from the judgment of the Circuit Court of Franklin County awarding the plaintiff, Central Illinois Public Service Company (C.I.P.S.), $999.99 damages for expenses incurred in the relocation of its gas line from the defendant's construction site to a public street. Prior to its relocation, the gas line lay beneath an alley that had been vacated by the village of West City in 1965.

The parties have briefed and argued the issue of whether the defendant's construction of a building over the gas main impermissibly interfered with C.I.P.S.' access to and maintenance of the pipeline, thereby entitling C.I.P.S. to recover relocation expenses. However, we must initially resolve the question of whether the ordinance vacating the alley effectively reserved to the village the use of the vacated alley for maintenance of a public utility.

The alley was included in property dedicated to public use in a real estate development in West City. In 1948, the village passed an ordinance granting to the Illinois Electric & Gas Company and its assigns the right to sell gas and lay, maintain, and operate a system of gas mains, service

pipes, and facilities for the distribution of gas "* * * in, under, across, upon and along all streets, avenues, alleys and public places" within West City for a period of 30 years.

In 1962, Illinois Electric & Gas Company assigned to C.I.P.S. all rights under the above ordinance. In 1964, C.I.P.S. installed 163 feet of two-inch gas main in the alley in question.

In 1965, the village passed an ordinance that declared the alley vacated, "* * * provided, however, that the Village reserve unto itself the right to use said alleyway, insofar as it is necessary to continue and maintain any public utility * * *."

A 1970 ordinance granted C.I.P.S. the authority to construct, operate, and maintain gas and electric utilities in the streets, public ways, and public property of the village for 55 years.

In 1977, the defendant had begun construction of an addition to his motel when the gas line was discovered. Defendant notified C.I.P.S. by telephone. In a letter to defendant, Ron Edmonds, district superintendent of C.I.P.S., stated that C.I.P.S. had an easement for the gas line, that construction of the addition over the line would create an unsafe condition, that the line would have to be relocated at the defendant's expense, and that electric service would not be connected until the gas line was moved. Defendant wrote that he would pay for the relocation if C.I.P.S. could demonstrate an easement interest, noting that his attorney had found none in the title abstracts to the property. Edmonds responded that the easement was provided by virtue of the "franchise" granted by the village to C.I.P.S. for the use of public streets and alleys to maintain the gas distribution system. Edmonds stated that the gas line was in a dedicated alley. C.I.P.S. subsequently removed the line to a public street and billed the defendant for the expenses involved.

At trial, Edmonds testified that 60 feet of gas line would have been covered by the building. He stated that the line was part of the main distribution system and that C.I.P.S. allowed no construction over mains. Both Edmonds and Darrel Smits, an engineer employed as district gas operation supervisor for C.I.P.S., testified that there would be no practical way to safely maintain and repair the line under the building.

Defendant testified that he acquired the Holiday Inn of Benton in 1971. When the gas line was discovered during the construction in 1977, he had been unaware of any vacated alleys or streets in the vicinity. He had been able to obtain a building permit from the village. After corresponding with Edmonds, he apparently inspected the ordinances described above. However, he saw nothing actually stating that C.I.P.S. had an easement, and he refused to pay for the relocation. He had agreed in his letter to pay for the relocation if C.I.P.S. would send him a copy of

the easement because he had been told that electric service would be denied if he did not pay.

■■ In general, a municipality is granted many powers over streets and public ways. (Ill. Rev. Stat. 1977, ch. 24, par. 11—80—2 *et seq.*) Among these are the power to regulate the openings in streets and other municipal property for the laying, building, repairing, and removing of gas mains and pipes. Ill. Rev. Stat. 1977, ch. 24, par. 11—80—7.

A municipality is also granted the authority to vacate a street or alley, or part thereof, by ordinance where the public interest is served. (Ill. Rev. Stat. 1977, ch. 24, par. 11—91—1.) In the instant case, the village of West City enacted an ordinance vacating a part of an alley and reserving to itself the right to use the alley to continue to maintain a public utility. The question is presented, therefore, whether the village could validly create this reservation.

In *People ex rel. Greer v. City of Chicago* (1910), 154 Ill. App. 578, a city's attempt to reserve the right to maintain sewer and water pipes in vacating a street and two alleys was held to be unauthorized by law and invalid. In *St. Clair Housing Authority v. Southwestern Bell Telephone Co.* (1944), 387 Ill. 180, 56 N.E.2d 357, the court left undecided a similar issue, and remanded to allow the city to be made a party to the suit.

However, in 1945 the legislature amended the vacation statute to allow reservation of certain rights concerning public service facilities. (Ill. Ann. Stat., ch. 24, par. 11—91—1, Historical Note, at 495 (Smith-Hurd 1962).) The current version of the vacation statute provides in pertinent part as follows:

"* * * if there are any public service facilities in such street or alley, or part thereof, the ordinance may also reserve to the municipality or to the public utility, as the case may be, owning such facilities, such property, rights of way and easements as, in the judgment of the corporate authorities, are necessary or desirable for continuing public service by means of those facilities and for the maintenance, renewal and reconstruction thereof." Ill. Rev. Stat. 1977, ch. 24, par. 11—91—1.

■■ Under this statute, West City effectively reserved to itself a right of way or easement for continued public service and maintenance of the gas main in the vacated alley. It might be argued that an express reservation of rights to C.I.P.S. as owner of the gas main was also required by terms of the statute. However, the laying of the gas main and its continuing use following the vacation of the alley were pursuant to the grant of authority from the village and encompassed within the rights reserved by the village upon vacation of the alley.

On appeal, the defendant does not directly contest C.I.P.S.' position

that its laying and use of the gas main in effect constituted the exercise of an easement. Rather, defendant contends that he had a right to construct a building on his own real estate and that his doing so did not unreasonably interfere with C.I.P.S.' use as a matter of fact. He cites authority for the proposition that an owner has the right to use his property for any purpose, so long as the use does not interfere with the proper enjoyment of a public or private easement therein. (*Tacoma Safety Deposit Co. v. Chicago* (1910), 247 Ill. 192, 93 N.E. 153; *Doan v. Allgood* (1923), 310 Ill. 381, 141 N.E. 779.) In *Doan v. Allgood,* the court added that the easement holder has no right, merely for the sake of convenience, to interfere with the fee holder's control and beneficial use of the land further than is necessary for the reasonable enjoyment of the easement.

Defendant primarily relies on *Peoples Gas, Light & Coke Co. v. Cook Lumber Terminal Co.* (1930), 256 Ill. App. 357, where the court held that a gas company's allegations were insufficient to support a temporary injunction preventing a property owner from constructing a building over an easement in which the gas company maintained a 36-inch gas main. The court noted that the private easement agreement expressly provided that the gas company would maintain the gas main so that it would not endanger or interfere with any buildings which the property owner might in the future construct across the easement. Also, applying the rule that the facts relied upon for issuance of a preliminary injunction should be stated with particularity, the court found that the bill in equity did not sufficiently show that the erection of the proposed building would deprive the gas company of reasonable access to the gas main.

It is apparent that the result in *Peoples Gas, Light & Coke Co. v. Cook Lumber Terminal Co.* was based on a careful balancing of the facts specific to that case. Other courts have enjoined or removed obstructions of a permanent or substantial nature, such as the construction of a building, at the suit of the pipeline owner, on the theory that such obstructions are an unnecessary restriction on the right of full enjoyment by the easement holder, or because such obstructions constitute an unnecessary hindrance to the pipeline owner in his access for maintenance and repair, with the consequent danger of explosion in the case of pipelines carrying flammable substances, and consequent risk of injury to persons occupying structures over the line. Annot., 28 A.L.R.2d 626 (1953).

■■ In any event, as argued by C.I.P.S., the question is not whether the defendant had the right to construct the building, but whether the defendant is required to pay C.I.P.S. for the expense of relocating the gas line over which defendant was constructing the building. It has been held that when the construction of a street over a pipeline constitutes an unreasonable interference with the use and enjoyment of the easement,

the owner of the easement is entitled to damages for the expenses incurred in lowering or protecting the pipeline. (*Buckeye Pipe Line Co. v. Keating* (7th Cir. 1956), 229 F.2d 795; *Tenneco, Inc. v. May* (6th Cir. 1975), 512 F.2d 1380.) On the facts in this case, we cannot say that a ruling that the defendant's construction of the building unreasonably interfered with C.I.P.S.' right to use and maintain the gas main was against the manifest weight of the evidence.

Accordingly, the judgment of the Circuit Court of Franklin County is affirmed.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.