**MISSISSIPPI RIVER TRANSMISSION CORPORATION, Plaintiff-Respondent,**

v.

**WACHTER CONSTRUCTION, INC., William F. Wachter and Suzanne Wachter, Defendant-Appellant.**

No. 51160.

Missouri Court of Appeals, Eastern District, Division Three.

May 5, 1987.

Motion for Rehearing and/or Transfer Denied June 9, 1987.

Application to Transfer Denied July 14, 1987.

Brinker, Doyen & Kovacs, P.C., Clayton, for defendant-appellant.

John C. Rasp, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendants William F. Wachter, Suzanne B. Wachter and Wachter Construction (Wachter) appeal from a judgment in a court tried case awarding plaintiff Mississippi River Transmission Corporation (MRTC) $50,000 for damages sustained when Wachter interfered with MRTC's easement across Wachter's property. We affirm.

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) which states that the judgment in a court tried case will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Setting aside a judgment on the ground that it is against the weight of the evidence should be done with caution and with a "firm belief" that it is wrong. *Id.* at 32.

The trial court made extensive findings of fact. In 1929, MRTC's predecessor in interest purchased an easement from John A. Crecelius, giving MRTC a right of way over farmland in south St. Louis County. Wachter is the successor to Crecelius' interest in that portion of the land, located near I–270, Lindbergh Boulevard and Union Road, which is the source of this dispute. The grant provided the grantee the right to:

> lay, construct, reconstruct, replace, renew, maintain, repair, operate, change the size of, and remove pipes and pipelines for the transportation of gas ... over, through, upon, under and across [the Wachter Property].... Together with the right of ingress and egress to and from the said right of way and to and from the said line or lines, or other equipment, or any of them, for the purpose aforesaid. The Grantor is to have the right to fully use and enjoy the above described premises, except as to the rights hereinbefore granted. The Grantee hereby agrees to pay reasonable damages which may arise to crops, timber, fences or buildings of said Grantor from the exercise of the rights herein granted.

Soon after, MRTC constructed a natural gas pipeline across the property. This pipeline, known as the "St. Louis Line," is part of a system extending from Louisiana to St. Louis. This line supplies a substantial portion of the natural gas sold in the St. Louis area by Laclede Gas Co. In 1980, MRTC replaced the pipeline. At that time MRTC offered to relocate the pipeline around the Wachter property if Wachter would agree to pay the additional costs of $5,000 to $6,000. Wachter declined and MRTC laid the new pipeline. The new pipeline's depth ranged between four and seven feet below the Wachter property. This new pipeline possessed a capacity for the transmission of natural gas at higher pressures.

In 1981, Wachter began to develop the property for an office building. In order to provide parking, it filled in the contours of the land, thus raising the amount of fill over the pipeline to a level of from thirteen to nineteen and one-half feet. Wachter built a retaining wall to support the fill and paved the area with asphalt. Both extended over the pipeline.

When apprised of this, MRTC complained to Wachter. Both sides discussed various options, including lowering the fill to thirteen feet, the deepest that could be dug by a wheeled backhoe, altering the retaining wall to improve access to the pipeline and installing vents through the asphalt. No agreement was reached and MRTC abandoned the pipeline and rerouted a new pipeline around the property.

The trial court heard detailed evidence from both sides as to the consequences of Wachter's acts. It specifically found that the asphalt and additional dirt cover would substantially increase the danger to per-

sons and property from the operation of the pipeline since it would be more difficult for the gas to evaporate into the atmosphere. Additionally, the gas would tend to accumulate in the soil surrounding the pipeline and to seep into Wachter's new building. Further, the additional dirt fill would substantially increase the stress on the pipeline. The court also noted that the soil cover and asphalt would inhibit appreciably the ability of MRTC to monitor the pipeline and locate leaks. The court found that the retaining wall would interfere with MRTC's access to the pipeline and would cause a significantly longer duration for repairs to be made, as well as increase the expense of the repairs. The court then found that Wachter's acts could potentially halt the St. Louis Line's supply of gas. Further, it found that these acts interfered with MRTC's ability to fulfill its obligations under federal and state law and would greatly reduce the margin of safety originally designed into the pipeline. The trial court found that no reasonably prudent operator of a natural gas transmission pipeline would operate under such conditions and a responsible person would relocate around the obstructions created by Wachter. The court noted that while some of these possibilities are remote, the serious consequences of any of the aforementioned dangers require MRTC to exercise a similarly high degree of care. The court, in its conclusions of law, then reasoned that the actions of Wachter interfered with MRTC's easement rights which constituted a tort.

On appeal, Wachter contends that the trial court erred in applying and declaring the law when it concluded that Wachter's acts constituted an interference. Wachter argues that the easement grant's provisions reserved rights broad enough to encompass their development and since MRTC's predecessor failed to bargain for rights sufficient to prevent development, Wachter's actions were reasonable.

Wachter's argument centers on two separate aspects of the grant's language. First, the grant states that Wachter has the right to the full use and enjoyment of its property except as to the rights granted to MRTC. As the grant does not prohibit the landowner from erecting a building or other structures adjacent to or even over the pipeline, Wachter contends it is not barred from implementing its building development plan. Secondly, it is asserted that since the easement imposes an obligation on the part of the grantee to pay damages when any of the Grantor's crops, timber, fences and buildings of the grantor are damaged, there is an inference that the landowner can build indiscriminately upon his land.

Wachter recognizes cases from other states cited by MRTC which have held that acts similar to Wachter's have constituted an interference. Wachter distinguishes them by noting that the word "buildings" does not appear in the clause which requires the holder of the dominant estate to reimburse the subservient estate for damages caused as a result of the easement's operation. The absence of this term, says Wachter, means that the grantors in those cases intended to restrict themselves in a manner not bargained for in the case at hand.

To support their position Wachter cites us to *Babler v. Shell Pipe Line Corp.*, 34 F.Supp. 10 (E.D.Mo.1940) which Wachter claims is clearly dispositive. There a landowner and a pipeline company had entered into an easement agreement which contained language similar to the grant here. According to Wachter, the court held that despite the easement, the landowner could erect a building directly over the pipeline as the grant did not limit the rights of the landowner to do that or other similar acts. *Id.* at 13–14.

■ We believe that Wachter misreads the grant's language. "The owner of the land may use his property in any manner not inconsistent with the easement granted." *Baum v. Glen Park Properties*, 660 S.W.2d 723, 726 (Mo.App.1983). Here, the grant does not explicitly prohibit building on top of the right of way. But this does not equate to permission to build over the easement. The fact that a grant does not include a catalogue of the myriad of imag-

inable interferences does not sanction the unmentioned. The grant allowed MRTC certain rights and the law does not allow Wachter to limit the reasonable enjoyment of those rights. *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983, 987 (1933).

We believe that Wachter invests too much meaning in the provision for repair of buildings. MRTC's predecessor agreed to pay the landowner damages for injuries to any buildings. As the land, in 1929, was barren of buildings, it is reasonable to conclude that buildings were anticipated to be erected. But that is not the issue. MRTC's lawsuit does not contend that by virtue of the 1929 grant, Wachter was precluded from ever developing the land. Indeed, Wachter has not been precluded from erecting any building. Rather, the issue is whether the provision requiring MRTC to pay for such damages also allows Wachter to affect MRTC's easement in an unreasonable manner.

MRTC cites us to two cases where the landowner interfered with the easement. In both cases, the landowner, either explicitly or implicitly, possessed rights co-extensive with Wachter's. These allegedly superior rights that the grantor had obtained by bargaining did not make privileged his acts in interfering with the easement.

In *Potter v. Northern Natural Gas Company*, 201 Kan. 528, 441 P.2d 802 (1968) the easement grant required the pipeline company to pay to the landowner for "any damages which may arise to ... growing crops, trees, shrubbery, fences, or buildings from the construction, maintenance or operation of said pipeline." *Id.* at 805. Then the landowner entered upon a project to level and regrade land over the pipeline. He sued the pipeline company to compel them to pay for the expense of lowering the pipeline so that it would conform to land cultivation requirements. The pipeline company agreed that it would lower the pipeline in order to accomodate the landowner's plans, but that it would require the landowner to pay. *Id.* at 807. The Kansas Supreme Court agreed with the pipeline company, saying: "The cost of lowering 300 feet of pipeline was occa-

sioned by the project of the landowner undertaken for his own benefit.... To require the pipeline company to pay this expense would have the effect of inserting an additional provision in the original grant requiring the grantee to furnish additional consideration for rights granted and received by it in 1950." *Id.* at 806. Wachter's extension of its parking lot over the pipeline right of way is no different.

A similar situation occurred in *Central Kentucky Natural Gas Co. v. Huls*, 241 S.W.2d 986 (Ky.1951). There, while the language of the grant was silent as to the payment for damages to buildings, the right of the landowner to construct structures on his land was apparent. Previous to the incident that was the subject of that suit, the pipeline had been relocated to accomodate the construction of a tobacco sales warehouse. Later, the landowners attempted to build a restaurant on top of the new right of way. The chancellor viewed the proposed restaurant as a temporary construction and refused to enjoin construction. *Id.* at 986–987. The court of appeals reversed, stating "to allow the construction of a building over this high power transmission line would be a burden upon the easement and an unwarranted violation of the rights created thereunder." *Id.* at 988.

In viewing the wording of this grant, we believe that had MRTC, while servicing its pipeline, caused injury to the newly constructed Wachter office building, the grant would have compelled it to pay damages. But to conclude that as a result of this perfectly reasonable clause that the landowner has the right to plan obstructions over and around the easement is an inference we are unwilling to make. Therefore, we hold that the word "buildings," placed as it is here in the context of damages caused by MRTC's exercise of its rights in the operation of its pipeline, confers no right upon the landowner to use its property in a manner inconsistent with the rights of the easement holder.

Nor does *Babler's* language rescue Wachter from the consequences of its acts. The court in *Babler* did interpret the

grant's easement language as not forbidding the landowners from constructing "structures immediately adjacent to existing pipe lines or even over them," *Babler*, 34 F.Supp. at 13. But, it also stated that the use made by the property owner is not to "disturb, injure or destroy this pipe line below." *Id.* at 14. In asserting that the landowner could build over the easement, it is obvious that the court contemplated that such a use would not disturb, injure or destroy. Unlike *Babler*, the court here found that Wachter's acts would destroy the easement.

This brings us to the problem with using *Babler* as a precedent. The issue of building a structure over the easement was never squarely before that court. The facts show that the dispute centered on the determination of the exact title of the easement holder and the course and width of the easement. *Id.* at 12. While the court also judicially construed the easement, it was in the nature of a general request to adjudicate all of the rights fixed by the easement. *Id.* at 13. As a result, the court, not faced with a concrete fact situation, ventured off into dictum. As noted above, it allowed for the construction of structures on top of the easement, but also banned any activity which would disturb, injure or destroy the easement. The question then becomes: At what point does the construction of a structure cross that threshold? Because *Babler* does not sufficiently narrow its focus on the issue of interference, it is of little help. "The *Babler* case did not consider this kind of a situation nor discuss interference with repairs and maintenance, such as were authorized by the easement herein involved (including necessary inspection) and shown by the evidence to be important for safety and for uninterupted service." *Missouri Power and Light Company v. Barnett*, 354 S.W.2d 873, 877 (Mo.1962).[1] For this and other reasons, *Babler* has been rejected by other courts outside of Missouri. *See Rueckel v. Texas Eastern Transmission Corp.*, 3 Ohio App.3d 153, 444 N.E.2d 77,

84 (1981). The trial court did not err in declaring or applying the law.

■ Wachter's second argument recognizes that the true issue in this case is whether its conduct created an interference with MRTC's easement that was unreasonable, given the expressed rights and duties of the parties conferred by the easement grant. Wachter relies on two cases where the building of structures over the easement were found not to be unreasonable interferences, *Peoples Gas, Light and Coke Co. v. Cook Lumber Terminal Co.*, 256 Ill.App. 357 (1930) and *Higdon v. Kentucky Gas Transmissions Corp.*, 448 S.W.2d 655 (Ky.1969). Both of these cases are sufficiently distinguishable from the case at hand. As has been noted in a subsequent Illinois case, *Peoples Gas* "was based on a careful balancing of the facts specific to that case." *Central Illinois Public Service Co. v. Davis*, 85 Ill.App.3d 496, 40 Ill.Dec. 764, 766, 406 N.E.2d 967, 969 (1980). The *Davis* court also explained that in *Peoples Gas*, "the private easement agreement expressly provided that the gas company would maintain the gas main so that it would not endanger or interfere with any buildings which the property owners might in the future construct across the easement." *Davis*, 40 Ill.Dec. at 766, 406 N.E.2d at 969. In *Higdon*, the court found that the pipeline company offered no protest when the landowner made a dirtfill twenty to thirty feet over the easement and constructed a six inch thick concrete street over the pipeline, and protested only after the landowner began the installation of a concrete pad that would come within four feet of the pipeline. It then reversed the trial court which had ordered the removal of the pad and enjoined the construction of such within the right of way's width of thirty feet, finding that "the record demonstrate[d] that no material impairment in the company's exercise of its right and duty to repair will result from the mere proximity of the concrete pad." *Higdon*, 448 S.W.2d at 656.

---

**1.** We note that the Supreme Court also found that *Barnett* was distinguishable from *Babler* because. in *Barnett*, the landowner did not re-

serve full rights and the grant did not mention buildings.

**450**

These cases point up what Brother Dowd said in *Beiser v. Hensic,* 655 S.W.2d 660, 663 (Mo.App.1983),

> The owner of a servient estate has the right of full dominion and use of an easement but he cannot substantially interfere with its reasonable use by the easement owner. *Stotzenberger v. Perkins,* 332 Mo. 391, 58 S.W.2d 983, 987 (1933); 2 G. Thompson, Real Property § 426, at 655 (1980 Replacement). The servient estate owner may not make the easement less useful or convenient. 2 G. Thompson, Real Property § 431, at 689 (1980 Replacement). *Reasonable use of an easement is a question of fact. Id.* § 426, at 655.

Here Wachter's use substantially interferred with the MRTC's use and the trial court so held.

Wachter would have us declare that as the possibility of an incident occurring was very remote, as access was not made physically impossible, as the nature of the terrain served warning that upon development the fill would be increased, as MRTC had once offered to relocate the pipeline for $5,000 or $6,000, and as certain aspects of its development were both commercially necessary and required by the St. Louis County Building Code, the trial court's findings went against the weight of the evidence. It also urges us to consider the various modifications to the development that it proposed. All of this came before the trial court. What also came before the court was detailed evidence which strongly supported MRTC's theory. We have reviewed the record of the trial court as well as the findings and we believe the judgment must stand.

Finally, Wachter cites us to *Mullins v. Metropolitan St. Ry. Co.,* 126 Mo.App. 507, 104 S.W. 890 (1907) for the proposition that MRTC could not insist on Wachter providing it the most convenient and inexpensive means of operating its pipeline and that MRTC could not insist that Wachter not develop its land if that would interfere in any manner with MRTC's convenience. *Id.* at 893. As noted above, that is not the issue in the case at hand. We observe that

*Mullins* like *Beiser* reiterates the principle that [t]he owner of the fee, while possessed of proprietary rights over the land, [is] not justified in exercising them in a manner to impair or obstruct the convenient enjoyment of the easement." *Id.* at 892. The clearly established facts of increased stress upon the pipeline, decreased monitoring capability, and more difficult access combined with the remote but nonetheless extreme urgency of a leak with potentially severe consequences are not questions of mere least expense or most convenience, but, are of such magnitude that Wachter's actions left a reasonable easement owner with no alternative but to abandon the easement.

The trial court's findings are supported by substantial evidence and is not against the weight of the evidence. We believe the trial court was correct and we affirm the judgment.

CRANDALL and KAROHL, JJ., concur.